827 P.2d 656

Larry W. WATSON and Sherry Watson, husband and wife, Plaintiffs–Appellants, Cross–Respondents,

v.

NAVISTAR INTERNATIONAL TRANS-PORTATION CORP., formerly known as International Harvester, Co., a Dela-ware corporation, Defendant–Respon-dent, Cross–Appellant,

and

Dokken Implement Company, an Idaho corporation, Defendant.

Larry W. WATSON and Sherry Watson, husband and wife, Plaintiffs–Respondents,

v.

NAVISTAR INTERNATIONAL TRANS-PORTATION CORP., formerly known as International Harvester, Co., a Dela-ware corporation, Defendant,

and

Dokken Implement Company, an Idaho corporation, Defendant–Appellant.

Nos. 16850, 17032.

Supreme Court of Idaho,
Moscow, October 1990 Term.

Feb. 21, 1992.

Rehearing Denied April 6, 1992.

Aherin & Rice, P.A., Lewiston, for appellant Watson. Darrell W. Aherin and Harry M. Philo argued.

Clements, Brown & McNichols, Lewiston, for respondent, Intern. Harvester. Michael E. McNichols argued.

Ware, O'Connell & Creason, Lewiston, for appellant Dokken. Theodore O. Creason and Christopher J. Moore argued.

BOYLE, Justice.

In this products liability action we are called upon to review several issues including whether a new trial is required upon a showing that the jury rendered a verdict that was based on averaging. Because we hold that the district court did not consider all of the necessary factors and standards when determining whether the jury reached an impermissible quotient verdict, we vacate the order granting a new trial and remand for further consideration. In addition, we affirm the district court's order denying the defendant's motion for a new trial on other grounds and affirm the denial of defendant's motion for judgment notwithstanding the verdict. Finally, we affirm the district court's order including Dokken Implement Company as a party in a new trial, if a new trial is ultimately

determined by the district court to be necessary.

## I.

Larry Watson was employed as a farm worker by George Brammer, who had purchased an International Harvester combine for grass seed harvesting from Dokken Implement Company (Dokken), a retail farm implement dealer. Dokken had purchased the combine from defendant International Harvester Company (International Harvester)[1] for resale.

While harvesting grass seed with the International Harvester combine the seed would often "bridge" in the grain tank stopping the flow of seed while it was being unloaded to a truck. In order to break the "bridge" and allow the grass seed to drop into the auger at the bottom of the tank, the combine operator would often get into the grain tank and thrust a pole down through the grass seed. On July 26, 1980, Watson, was severely injured when he attempted to unbridge or unplug grass seed in what appeared to be a grain tank that was three-quarters full. When the bridged seed gave way, Watson slipped and his right foot went into a four-inch opening in the auger cover guard at the bottom of the grain tank. His foot, which was severely mangled by the auger, was later surgically amputated below the knee.

Watson brought this action alleging negligence in the design, manufacture, sale and set-up of the combine. Specifically, Watson claimed that neither the manufacturer nor the dealer provided any instructions on the safe method of unbridging or unclogging grass seed and that the warnings concerning the augers were inadequate.

A jury trial was conducted in February, 1986, at which time the jury returned a special verdict assessing damages for Larry Watson at $666,222.22 and $67,222.22 for his wife, Sherry Watson. The jury found Larry Watson 41.1% negligent, International Harvester 58.9% negligent and Dokken 0% negligent. Nine of the twelve jurors signed the verdict form.

After trial, counsel for International Harvester interviewed the jurors and based upon information it discovered during those conversations a motion for new trial and supporting affidavits were filed on February 18, 1986. The new trial motion was based in part on alleged juror misconduct and was supported by affidavits from five of the jurors and an alternate juror. International Harvester asserted that three jurors who had decided that it was not negligent were excluded from further discussions and that the remaining nine jurors agreed to be bound by an average of their respective assessments of the percentages of negligence apportionable to the parties as well as to the amount of damages.

Watson filed a motion to strike the affidavits, and alternatively for an extension of time to submit opposing affidavits. Watson also filed a notice of intent to examine jurors. The trial court scheduled a hearing and indicated its intent to question the jurors. However, International Harvester petitioned this Court for a writ of prohibition to prevent the questioning of the jurors. After we issued an order and alternative writ of prohibition requiring the district court to show cause why it should not refrain from examining the jurors, Watson withdrew his motion to examine the jurors.

After hearing oral argument on the motions, on November 24, 1986, the district court granted International Harvester's motion for a new trial based on the conduct of the jury in reaching its verdict, but denied Harvester's motion for judgment notwithstanding the verdict. An order granting a new trial was entered on January 13, 1987.

On January 22, 1987, Watson filed a motion for reconsideration and shortly thereafter on February 4, 1987, filed a second set of ten "explanatory" juror affidavits in support of his motion. The district court denied the motion for reconsideration and

---

1. Since this action was filed the defendant's name was changed to Navistar International Transportation Corporation, however, through-out this opinion the defendant's former name will be used.

ruled that the second set of juror affidavits were untimely filed and should have been submitted within the time allowed under I.R.C.P. 59(c). In its decision and order, the district court also found that Watson's motion failed to meet the requirements of I.R.C.P. 59(e) or 60(b) and that the second set of juror affidavits could not be considered. In addition, the district court held that the new trial order would apply to all parties and issues, including defendant Dokken.

Watson appeals the district court's order for a new trial and its failure to consider the second set of affidavits in support of the motion to reconsider. International Harvester cross-appeals the district court's denial of a new trial based upon evidentiary rulings regarding the admission of subsequent remedial measures, denial of its motion for mistrial, erroneous jury instructions, denial of its motion for judgment notwithstanding the verdict and other alleged irregularities. Dokken appeals the district court's decision to include it in the new trial order.

## II.

### A.

Watson argues on appeal that International Harvester waived any right to question or challenge the verdict by not objecting at the time the jury was polled. We disagree. When the special verdict was returned the trial judge stated on the record that "it doesn't appear that we have a jury that filled out this form in an orthodox manner." Instead of answering each interrogatory yes or no, the jury had written in each blank the number of jurors voting yes or no. The trial judge gave the parties an opportunity to object to the verdict form and to request that the jury deliberate further. After it was determined that the same nine jurors voted on each

question on the special verdict form,[2] the jury was polled. The record indicates that the trial court then gave the parties an additional opportunity to comment or object to the verdict. All parties declined.

Watson cites several cases for the proposition that failure to object to the form of a verdict at the time of its submission or reception constitutes a waiver of that right. *See Pacheco v. Safeco Ins. Co. of Am.,* 116 Idaho 794, 780 P.2d 116 (1989); *Barlow v. International Harvester Co.,* 95 Idaho 881, 522 P.2d 1102 (1974); *Judd v. Oregon Short Line R. Co.,* 55 Idaho 461, 44 P.2d 291 (1935); *Pedersen v. Moore,* 32 Idaho 420, 184 P. 475 (1919). However, Watson's reliance on these cases is misplaced. The fact that a party does not object to the form of a verdict, does not preclude that same party from subsequently raising the question of jury misconduct on a motion for new trial.

In *Pacheco v. Safeco Ins. Co. of Am.,* 116 Idaho 794, 780 P.2d 116 (1989), counsel knew of the alleged misconduct on the part of a juror before the verdict was returned. We held in *Pacheco* that when the complaining party or his counsel knew of the alleged jury misconduct before the verdict is returned, but nevertheless kept silent, any right to claim misconduct is waived. 116 Idaho at 801, 780 P.2d at 123. The facts of the instant case are readily distinguishable from *Pacheco.* Here, the jurors returned a special verdict with figures down to the pennies written in the blanks provided for the amount of damages and the percentage of negligence was set forth in decimal points. Although these figures suggested to the parties and to the district judge that the jury determined negligence and damages by averaging, there is nothing on the face of the special verdict form itself or the manner in which the verdict was returned which indicates that the verdict was determined by an improper

---

**2.** The trial judge was concerned "as to what nine said yes and what three said no, and whether or not it was the same nine or a different nine or three." Furthermore, International Harvester was concerned that the same nine jurors that found negligence on its behalf were the same nine that assessed damages and signed

the verdict form. We note in *Tillman v. Thomas,* 99 Idaho 569, 585 P.2d 1280 (1978), this Court held that the same nine jurors did not need to vote together on every single question in a special verdict form. *See also Fish Breeders of Idaho, Inc. v. Rangen, Inc.,* 108 Idaho 379, 700 P.2d 1 (1985).

antecedent agreement to be bound which is necessary for a showing of an impermissible quotient verdict.

Moreover, the Idaho Rules of Civil Procedure recognize that a party has no way of knowing whether a verdict was an impermissible quotient verdict until some of the jurors are interviewed. Idaho Rule of Civil Procedure 59(b) allows fourteen days from the entry of judgment to present a motion for new trial and I.R.C.P. 59(a) requires that affidavits be submitted in support of a motion for new trial when alleging jury misconduct. The fact that a party suspects at the time the jury returns its verdict that the verdict may have been a quotient verdict is not sufficient to constitute waiver. Thus, we hold under these circumstances that International Harvester's failure to object to the form of the verdict at the time the jury returned its verdict does not constitute a waiver of the right to subsequently bring a timely motion for new trial based on alleged jury misconduct.

## B.

▉ Watson also appeals the decision of the district court declining to reconsider its order to grant a new trial in light of the second set of juror affidavits. Watson's motion for reconsideration of the trial court's order granting a new trial was based on I.R.C.P. 59(e), 60(b)(1), (3) and (6) and was made nearly a year after the initial motion for new trial had been filed by International Harvester. At that time Watson submitted the second set of ten juror affidavits, including five supplemental affidavits from the jurors relied upon by International Harvester in its initial motion for new trial. The trial court denied the motion to reconsider on the ground that Watson had ample opportunity to raise all of the issues and present the new evidence in the form of juror affidavits when International Harvester's motion for a new trial was previously argued. The trial court correctly ruled that Watson had not complied with the time requirements of I.R.C.P. 59(c) in filing the affidavits opposing International Harvester's motion for

new trial and it did not err in refusing to consider Watson's second set of affidavits.

▉ With respect to Watson's motion for reconsideration, I.R.C.P. 11(a)(2), as it existed in 1987, limited the right to reconsideration when it involved the granting or denial of a motion for new trial under Rule 59. I.R.C.P. 11(a)(2) (amended 1981) states in part:

[B]ut this provision and this rule shall ‿not create the right to file a motion for reconsideration of the granting or denying of a motion under Rule 50(b), 52(b) or Rule 59.

The rule was amended in 1987 and currently reads:

Motion for Reconsideration. A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any order of the trial court made after the entry of final judgment may be filed within fourteen (14) days from the entry of such order; provided, *there shall be no motion for reconsideration of an order of the trial court entered on any motion filed under Rules 50(a), 52(b), 55(c), 59(a), 59(e), 60(a) or 60(b).*

I.R.C.P. 11(a)(2)(B). (Emphasis added.)

Rule 11, both before and after its 1987 amendment, clearly disallows a motion to reconsider an order granting or denying a motion for new trial under Rule 59. Watson's motion for reconsideration brought pursuant to Rule 59(e) was properly denied by the trial court because it is a motion specifically excluded from reconsideration by I.R.C.P. 11(a)(2)(B).

▉ Watson argues that its motion for reconsideration was also brought as a Rule 60(b) motion to relieve a party from a final judgment or order. The district court has considerable discretion whether to reconsider its order under the grounds specified in Rule 60(b). *Johnston v. Pascoe,* 100 Idaho 414, 599 P.2d 985 (1979). Moreover, Rule 60(b) requires that good cause be shown in order that a trial court grant the requested

relief, *Hendrickson v. Sun Valley Corp., Inc.*, 98 Idaho 133, 559 P.2d 749 (1977), and the rule was not intended to allow the trial court to reconsider the legal basis for its original decision granting or denying a motion for new trial. *Syth v. Parke*, 121 Idaho 162, 823 P.2d 766 (1991) on rehearing); *First Bank & Trust v. Parker Bros.*, 112 Idaho 30, 730 P.2d 950 (1986); *see also Spivey v. District Court*, 37 Idaho 774, 219 P. 203 (1923).

A review of the record demonstrates the dilemma facing the trial court when presented with the second set of juror's affidavits. The first set of affidavits filed by International Harvester indicated that the jurors had "agreed to be bound" by the average of their respective figures.[3] The second set of affidavits filed by Watson stated that while the jurors averaged their figures, no agreement to be bound by the average actually existed and several jurors disclaimed their prior statements made in the first set of affidavits. After reading the second set of affidavits the trial court, at the February 6, 1987, hearing on Watson's motion for reconsideration, stated:

> Had I had all of these affidavits, I would not have granted a motion for a new trial, because with all of the affidavits now that I have, I could not have concluded that the verdict was arrived at by chance.

The trial court correctly ruled that the second set of affidavits were not timely filed within the period prescribed by I.R.C.P. 59(c), and could not be considered under Rule 60(b). Watson argues that the second set of affidavits were "explanatory" affidavits not governed by I.R.C.P. 59(c). In reality, however, as noted by the trial court, these affidavits were simply "opposing affidavits" as contemplated by I.R.C.P. 59(c), and should have been filed within the period of time allowed by the Rule. Accordingly, the trial court properly refused to consider the second set of affidavits because they were not timely filed.

The district court also ruled that Watson's motion failed to meet the requirements of Rule 60(b) because Watson failed to show good cause for the late submission of opposing affidavits. The trial court ruled that Watson had the opportunity to raise these issues and present the evidence included in the second set of affidavits at the time International Harvester's motion for new trial was heard.

After carefully reviewing the record, we find no abuse of discretion in the trial court's decision. The right to grant or deny relief under the provisions of Rule 60(b) is discretionary, and absent an abuse of discretion the trial court's decision will be affirmed on appeal. *Johnston v. Pascoe*, 100 Idaho 414, 599 P.2d 985 (1979). After carefully reviewing the record, we hold that the trial court's denial of Watson's motion for reconsideration was not an abuse of discretion and it is, therefore, affirmed.

---

**3.** The district court specifically relied upon two affidavits in granting the order for a new trial. The first affidavit of Diana Bull stated in part:

> Because of the wide varieties of opinions, and the firmness of each of the jurors in their opinions, the jurors realized that we would never be able to reach a verdict unless each juror's opinion was averaged with the others. As a result, the nine jurors then participating agreed to average their opinions and to be bound by the average....
>
> Because there was some dissatisfaction with our first vote on the percentage of negligence, we decided to vote again, and that vote would be our decision.
> ....
> I didn't feel right about signing the verdict, but since I had previously agreed to be bound by the average, and thought that without averaging the jurors' decisions, we would never be able to reach a verdict, I went ahead and signed the verdict.

The first affidavit of Cynthia Hochhalter states:

> Because of the wide difference in the opinions of the jurors, and the great strength with which those opinions were held, we discussed and understood that we would never be able to reach a verdict without averaging the opinions. We agreed to average the nine jurors' opinions and be bound by the average of the votes....
>
> At first, I was reluctant to sign the verdict, because it remained my opinion that Larry Watson was more negligent than International Harvester Company and should not recover damages. I signed the verdict because I felt that I was bound by my previous agreement to accept the average of the percentages of negligence and the average of money damages.

## III.

Watson argues that even if the second set of affidavits are not considered and considering only the record established in the first set of affidavits the trial court erred in granting a new trial because jury misconduct was not established. To properly consider this argument it is necessary that we review our precedent regarding the quantum of evidence necessary to prove jury misconduct by a quotient verdict, and to also reconcile our cases in order to give the trial courts guidance when presented with this issue in future cases.

## A.

In Idaho, the general rule has long been that juror affidavits cannot be used to impeach a verdict. *See Robinson v. White*, 90 Idaho 548, 414 P.2d 666 (1966); *Dawson v. Eldredge*, 84 Idaho 331, 372 P.2d 414 (1962); *State v. Bedwell*, 77 Idaho 57, 286 P.2d 641 (1955); *Hall v. Johnson*, 70 Idaho 190, 214 P.2d 467 (1950); *J.P. Seeburg Corp. v. Johnson*, 59 Idaho 439, 83 P.2d 432 (1938); *Moyer v. Hyde*, 35 Idaho 161, 204 P. 1068 (1922); *Bernier v. Anderson*, 8 Idaho 675, 70 P. 1027 (1902); *Griffiths v. Montandon*, 4 Idaho 377, 39 P. 548 (1895). The United States Supreme Court has held that the general rule has been consistently followed to assure that open and frank jury deliberations occur without the fear of subsequent harassment. *Tanner v. U.S.*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Finality in litigation has also been considered another significant benefit of the general rule. *Tanner v. U.S.*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

The only recognized exception to the general rule in Idaho has been that affidavits of a juror may be used to impeach a jury verdict if the verdict was the result of chance. *Papp v. Cantrell*, 96 Idaho 751, 536 P.2d 746 (1975); *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974); *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964); *Butland v. City of Caldwell*, 51 Idaho 483, 6 P.2d 493 (1931); *Cochran v. Gritman*, 34 Idaho 654, 203 P. 289 (1921); *Newman v. Great Shoshone and Twin Falls Water Power Co.*, 28 Idaho 764, 156 P. 111 (1916); *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 152 P. 212 (1915); *Giffen v. City of Lewiston*, 6 Idaho 231, 55 P. 545 (1898); *McDonald v. Great Northern Railway Co.*, 5 Idaho 8, 46 P. 766 (1896); *Flood v. McClure*, 3 Idaho 587, 32 P. 254 (1893); *see also Roll v. City of Middleton*, 115 Idaho 833, 771 P.2d 54 (Ct. App.1989). This exception is presently reflected in I.R.E. 606(b) which specifies that a juror "may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance."

## B.

The definition of a chance verdict has been discussed in many cases. In *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 152 P. 212 (1915), we noted two types of chance verdicts, a gambling verdict and a quotient verdict. A gambling verdict, such as pitching a coin or using some other gambling means to determine the result of a trial, is unacceptable because "there is no discussion or consideration of the merits by the jury." *Beakley*, 28 Idaho at 72, 152 P. at 214.

Typically, the use of an averaging process as a basis for compromise is considered acceptable, *see Cochran v. Gritman*, 34 Idaho 654, 672, 203 P. 289, 295 (1921); *Newman v. Great Shoshone and Twin Falls Water Power Co.*, 28 Idaho 764, 773, 156 P. 111, 113 (1916), and is sometimes even desirable, except when the jury agrees in advance to be bound by the average. *See Papp v. Cantrell*, 96 Idaho 751, 536 P.2d 746 (1975); *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974); *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964). Thus, when a jury engages in a process of averaging, coupled by a prior agreement by each of the jurors to be bound, the resulting verdict has been la-

beled a quotient verdict.[4]

Because an average is permissible without a prior agreement, an agreement to be bound has been called "the vitiating fact" of a quotient verdict. *Clark v. Foster,* 87 Idaho 134, 391 P.2d 853 (1964); *Butland v. City of Caldwell,* 51 Idaho 483, 6 P.2d 493 (1931); *Beakley v. Optimist Printing Co.,* 28 Idaho 67, 152 P. 212 (1915). *See also Papp v. Cantrell,* 96 Idaho 751, 536 P.2d 746 (1975); *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974); *Cochran v. Gritman,* 34 Idaho 654, 203 P. 289 (1921); *Newman v. Great Shoshone and Twin Falls Water Power Co.,* 28 Idaho 764, 156 P. 111 (1916).[5]

### C.

There have been two rationales given for including a quotient verdict in the category of chance verdicts constituting jury misconduct. The first is that the law requires a jury verdict to be determined by "solemn deliberation." *See Cochran v. Gritman,* 34 Idaho 654, 671, 203 P. 289, 294 (1921). By participating in an averaging process, courts have long been concerned that "the

reason, reflection and conscientious conviction" that should accompany a jury verdict would be absent. *Flood v. McClure,* 3 Idaho 587, 594, 32 P. 254, 256 (1893). "The clear intent of the law is that the verdict shall be the result of intellectual discussion, deliberation and conviction by and of the jury...." *Flood,* 3 Idaho at 594–95, 32 P. at 256. By agreeing to be bound in advance to an unknown average, it was felt that the careful deliberation and good judgment of a juror could be given up to chance. The rule of law precluding chance verdicts was well stated in *Cochran v. Gritman,* 34 Idaho 654, 203 P. 289 (1921).

The purpose of this rule is to prevent jurors from arriving at their verdict by any method of chance, and to require them to deliberate upon any question submitted to them, and to reach their conclusion only after such deliberation. Manifestly, this would not be done if the jurors resorted to chance to determine what the verdict should be. The chief merit claimed for the jury system is that it requires for a verdict the combined judgment of the several members, or of a

---

**4.** The term "quotient verdict" originally related to a numerically averaged dollar figure for damages. However, a quotient verdict can also relate to any numerical verdict by a jury such as percentage of fault in the comparative negligence context. *See Clark v. Foster,* 87 Idaho 134, 391 P.2d 853 (1964).

**5.** Seventeen years ago, Chief Justice Bakes called upon this Court to reexamine our precedents dealing with quotient verdicts. While the majority in that case upheld the jury verdict on the ground that it was not a quotient verdict, in his specially concurring opinion, the Chief Justice stated:

As the majority points out, it has long been the rule in Idaho that if jurors do not agree to be bound in advance they may average their own personal judgments of how much a party should recover and submit that amount as their verdict. While we ought not to lightly overturn precedent of such long standing, the soundness of that rule escapes me. Even though a juror might agree in advance to be bound by such an averaging process, a juror is truly never bound by the verdict until it has been returned in open court and the jury polled. Only after that time is a juror bound by the results of any such averaging process.

The vice of the averaging procedure is that jurors give up their individual judgments to

an arithmetical process. The rule which we have followed for many years in this state attempts to distinguish between legally acceptable averaging and unlawful averaging on the basis of an irrational distinction, i.e., did the jurors agree to be bound in advance. Since jurors are never bound until their verdict is rendered and they are polled, the distinction which has been historically drawn in this state is not really meaningful. It is time that we reexamine the cases relied upon by the majority to see if they really improve the judicial process.

*Lombard v. Cory,* 95 Idaho 868, 872, 522 P.2d 581, 585 (1974) (Bakes, J., specially concurring) (citations omitted). This call for reexamination has remained unanswered these many years simply because of the relative dearth of cases on the quotient verdict issue. The only subsequent case was *Papp v. Cantrell,* 96 Idaho 751, 536 P.2d 746 (1975), in which we again did not find that the jurors had rendered an impermissible quotient verdict. Because we avoid overturning precedent when there are other grounds for a case's disposition on appeal, *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 803 P.2d 978 (1990), we have not had the need to reexamine our precedent on this issue. However, because of the unique posture of this case it is necessary to reexamine our precedent on quotient verdicts at this time.

lawful majority, upon the controverted questions of fact, which can be had only after solemn deliberation. Hence a verdict arrived at by chance is not a verdict within the meaning of the law.

. . . .

A verdict is not subject to be challenged on the ground that it was a chance verdict because the jurors during the course of their deliberation, in order to compose their differences of opinion as to the amount that should be allowed, undertake to average their judgment, unless it clearly appears that before doing so they each severally agree to be bound by the result of such chance methods after such result has been reached. Sometimes jurors, after returning a verdict, are induced by the losing party to make affidavits impeaching such verdict which reflect upon their intelligence or integrity, and a verdict should only be set aside on the ground that it was arrived at by chance upon a clear showing that it is the result of chance instead of deliberation.

34 Idaho at 670–72, 203 P. at 294–95.

The second reason given for including a quotient verdict in the category of jury misconduct was that if jurors could

bind themselves in advance, it might lead to great injustice, because it would enable one inveterate juror, by marking down a very large or small sum, to produce an average and procure a verdict for an amount which would be unreasonable, and at utter variance with the judgment of other jurors.

*Flood*, 3 Idaho at 594, 32 P. at 256 (quoting *Lee v. Clute*, 10 Nev. 149 (July term 1875)). Therefore, because of the uncertainty of an average when an amount is submitted by a biased juror, the result was considered to be the result of chance if it was coupled by an antecedent agreement to be bound.

The policy favoring finality was stated by the U.S. Supreme Court over seventy-five years ago in *McDonald v. Pless*, 238 U.S. 264, 269, 35 S.Ct. 783, 785, 59 L.Ed. 1300 (1915). The U.S. Supreme Court held that the possibility of a quotient verdict did not warrant "a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict." Noting the difficult balance which must be struck, the Court stated:

When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury to the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.

*McDonald*, 238 U.S. at 267, 35 S.Ct. at 784. While the U.S. Supreme Court assumed a quotient verdict theoretically amounted to misconduct, the Court ultimately favored finality. In *McDonald* the Supreme Court indicated that if affidavits could be used to prove a quotient verdict, then

all verdicts could be and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

*Id.*

D.

■■■■■ It is well established that the decision to grant or deny a motion for a new trial generally rests in the sound discretion of the trial court. *See, e.g., Robertson v. Richards*, 115 Idaho 628, 769 P.2d 505 (1989); *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 766 P.2d 751 (1988); *Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979). Although we have held that a conflict in affidavits

can be determined on appeal independent of the conclusions reached by the trial court, *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 152 P. 212 (1915), our more recent cases do not so hold. *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964); *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974). However, in *Lombard v. Cory*, we held "[i]t is well settled that this Court will not upset a denial of a new trial by the district court without a clear showing of abuse of discretion. Of course, if the jury's verdict was a quotient verdict, then it was an abuse of discretion for the trial court to deny a new trial." 95 Idaho at 870, 522 P.2d at 583 (citations omitted). In the instant case the district court interpreted this language as a reservation of authority to limit the discretion of a trial court. After considering this matter, we hold that the determination of whether the conduct of the jury in returning a verdict based on averaging has deprived a party of a fair trial, and whether to grant or deny a new trial, is left to the sound discretion of the trial court. So clarified, this area of the law is in harmony with the general rules and principles governing motions for new trial. Therefore, once the trial court in the instant appeal applies the standards set forth herein to the first set of affidavits, and after considering all of the circumstances of the jury's deliberative process, it will be in a position to determine whether an impermissible verdict was reached and whether the conduct of the jury in reaching its verdict denied any of the parties a fair trial.

E.

 With respect to the burden of proof, we have required that the party alleging jury misconduct must make a "clear showing" that the jurors agreed in advance to be bound. *Cochran v. Gritman*, 34 Idaho 654, 672, 203 P. 289, 295 (1921). In *Papp v. Cantrell*, 96 Idaho 751, 536 P.2d 746 (1975), we noted, in allowing the verdict to stand, that "[t]he record lacked substantial evidence to indicate that this verdict was the result of a method of chance, rather than a process of reasoned deliberations." 96 Idaho at 753, 536 P.2d

at 748. Furthermore, we have required that each juror "severally agree to be bound" by the result of an average in order to constitute jury misconduct. *Cochran v. Gritman*, 34 Idaho 654, 672, 203 P. 289, 295 (1921). Our requirement that each juror be bound was considered necessary to discourage disgruntled jurors from assisting the losing party to upset the verdict. *See Cochran v. Gritman*, 34 Idaho 654, 203 P. 289 (1921); *see also Beakley v. Optimist Printing Co.*, 28 Idaho 67, 74–76, 152 P. 212, 215 (1915) (Sullivan, C.J., dissenting). Thus, even if affidavits from every juror are not presented with the motion for a new trial, the affidavits filed with the court must establish that all jurors agreeing to the verdict were impermissibly bound. Reflecting our reluctance to expand a potentially broad exception, the requirement that juror affidavits make a clear showing that each juror severally agree to be bound has been repeated in our recent cases. *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974); *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964).

Additionally, our cases have noted that subsequent discussions or increases in the amount awarded after an average has been taken demonstrates that a prior agreement to be bound either did not exist or that it was not followed by the jurors. *See Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974); *Butland v. City of Caldwell*, 51 Idaho 483, 6 P.2d 493 (1931); *Cochran v. Gritman*, 34 Idaho 654, 203 P. 289 (1921); *Newman v. Great Shoshone and Twin Falls Water Power Co.*, 28 Idaho 764, 156 P. 111 (1916); *Giffen v. City of Lewiston*, 6 Idaho 231, 55 P. 545 (1898). Moreover, this Court has not felt bound by the affirmative declarations that an agreement to be bound existed when it was contradicted by other affidavits. *See Butland v. City of Caldwell*, 51 Idaho 483, 6 P.2d 493 (1931); *Newman v. Great Shoshone and Twin Falls Water Power Co.*, 28 Idaho 764, 156 P. 111 (1916); *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 152 P. 212 (1915); *Giffen v. City of Lewiston*, 6 Idaho 231, 55 P. 545 (1898).

Therefore, it is necessary for the district court to consider the first set of affidavits to determine whether a clear showing had been made that each juror joining in the verdict severally agreed to be bound by the average in light of the standards provided herein.

F.

In addition to the standards articulated in our prior cases, the purposes underlying the chance verdict rule should also be considered by a trial court. An explicit focus on the purposes of the rule follows from the current formulation of the rule in I.R.E. 606(b) [6] and prevents undue emphasis on conclusionary language scripted from our cases in the juror affidavits. A focus on the purposes of the rule allows the trial court to better assess whether a verdict was truly the result of chance or the result of meaningful deliberation.

To understand how this focus follows from Rule 606(b) it is helpful to review the background that has led to our current rule. The original exception for chance verdicts enjoyed an impressive longevity. Being in derogation of the common law, the exception was originally created by statute.[7] *See Flood v. McClure,* 3 Idaho 587, 32 P. 254 (1893). However, in 1975 that statute was repealed. 1975 Idaho Sess. Laws Ch. 242. After its repeal, this Court adopted I.R.C.P. 59(a)(2) which retained the wording of the former statute.[8]

On July 1, 1985, Rule 59(a)(2) was significantly amended by deleting the specific reference to chance verdicts.[9] Coinciding with this change, this Court adopted Idaho Rules of Evidence, Rule 606(b) which generally provides that "a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes." I.R.E. 606(b). One of the few exceptions to this rule is that evidence may be accepted regarding a jury's "resort to chance." I.R.E. 606(b);

**6. Rule 606(b)** Inquiry to validity of verdict or indictment.

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

**7.** *See* Code of Civil Procedure of 1881, § 411(2). This statute stated that a new trial could be granted based upon

> Misconduct of the jury; and when any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors....

*Id.* This statute was subsequently reenacted, although periodically renumbered with minor punctuation changes, in the Revised Statutes of 1887, Revised Codes of Idaho in 1908, the Compiled Laws of Idaho in 1918, the Compiled Statutes of Idaho in 1919, the General Laws of the State of Idaho in 1931, and the Idaho Codes from 1932 to 1975. With the adoption of the Idaho Rules of Civil Procedure in 1975, the statute allowing a new trial based on a chance verdict, then renumbered as I.C. § 10–602, was repealed. *See* 1975 Idaho Sess.Laws Ch. 242.

**8.** Prior to the amendments made in 1985, Rule 59(a) stated:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
> ....
>
> 2. Misconduct of the jury; and when any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors.

**9.** Following the 1985 amendments, Rule 59(a)(2) was shortened simply to the words "Misconduct of the jury." The remainder of subsection (2) was deleted.

see *Roll v. City of Middleton,* 115 Idaho 833, 836, 771 P.2d 54, 57 (Ct.App.1989).

The focus of I.R.E. 606(b) on outside evidence or influence to prove jury misconduct manifests an intent to avoid the policy concerns articulated by the courts that verdicts be final and that jury deliberations not be the subject of post-trial inquiry or harassment. Not only does Rule 606(b) have a sound basis in policy, but it also attempts to avoid the practical concern that an affidavit by a juror to impeach his or her own verdict is potentially unreliable.

In its remarks at the conclusion of oral arguments on the motion for a new trial, the district court summed up the nature of the affidavits as follows:

Thank you, Counsel. Well, gentleman, unfortunately much of what Mr. Aherin has said about our system and where it might go if we are to deal with the jurors like we have dealt with them in this case, is going to end up to be true if we don't change our rules. Our rules do provide that after a trial, that a party who is unhappy with the trial can attack that verdict based upon jury misconduct. And in Idaho, since 19–1893 to the present has considered that chance verdicts are, in fact, grounds for a new trial. Our new rules of evidence, 606, provides that jurors are not competent to function as witnesses concerning what happened in the jury room, with very few exceptions. And unfortunately, one of those exceptions is whether or not they had to resort or determined an issue by resort to chance.

The law is quite clear that jurors can take averages and that is no problem. They often can't arrive at a verdict and no jury is ever going to come to a decision, the same decision, when asked to decide damages. That's a very rare occasion, especially when we're dealing with a personal injury situation. They're going to come up with different ideas and good jurors are going to fight about it and want the fellow jurors to arrive at the decision they came up with. And quite often, they can't do it, and averaging is very—is commonplace. However, the laws are quite clear that if they agreed to be bound in advance by the average, then it's a quotient verdict and it's got to be thrown out, it's quite clear. So then, this Court is presented with affidavits from a, for instance, Mrs. Bull, who says, quote, "I didn't feel right about signing the verdict, but since I had previously agreed to be bound by the average and thought that without averaging the jurors' decision, we would never be able to reach a verdict, I went ahead and signed the verdict."

Now, that language is quite clear, she signed that affidavit under oath. We have another juror [Cynthia Hochhalter] who said, "At first, I was reluctant to sign the verdict because it remained my opinion that Larry Watson was more negligent than International Harvester Company and should not recover damages. I signed the verdict because I felt that I was bound on my previous agreement to accept the average of the percentage of the negligence and the average of the money damages." This Court was left with no choice based upon the state of the record at that time, no choice at all but to conclude that the jury had arrived at their decision by agreeing in advance to be bound by an average....

Now, let me tell you that had I been confronted with additional affidavits that Mr. Aherin supplied to me today and yesterday and the day before, where the one woman, Mrs. Bull, now says, "On page 5 of my previous affidavit where it says I didn't feel right about signing the verdict, but since I had previously agreed to be bound by the average ... this is not an accurate statement." We have Mrs.—all the other jurors go through the same process and we have some flat-out contradictions. And it's a sad state of affairs that we have a system that permits lawyers to go out and get an affidavit that says X and an affidavit—another attorney go out and get an affidavit that says Y. It's not a good state of affairs at all. But our rules do permit that to be done. Had I had all of these affidavits, I would not have granted a motion for a new trial, because with all of the affida-

vits now that I have, I could not have concluded that the verdict was arrived at by chance.

R., Vol. 1, at 40–3 (Motion Hrg., Feb. 6, 1986).

By avoiding potentially misleading affidavits of jurors attempting to impeach their verdict, Rule 606(b) helps focus on the true purpose of our chance verdict rule. The purpose of the rule is to assure that a jury participate in "solemn deliberation," see *Cochran v. Gritman*, 34 Idaho 654, 671, 203 P. 289, 294 (1921), and avoid a verdict that was irrationally skewed by a minority of "inveterate juror[s]." *Flood v. McClure*, 3 Idaho 587, 594, 32 P. 254, 256 (1893) (quoting *Lee v. Clute*, 10 Nev. 149 (July term 1875)).

After reviewing the entire record we conclude that the district court did not consider all of these factors in granting a new trial. When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. We have held that the sequence of the inquiry is 1) whether the lower court rightly perceived the issue as one of discretion; 2) whether the court acted within the out boundaries of such discretion and consistently with any legal standards applicable to specific choices; and 3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1991); *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989). In the instant appeal the trial court correctly perceived the issue as one of discretion and reached its decision by an exercise of reason satisfying the first and third elements of the inquiry. However, the trial court focused its attention on the "agreed to be bound" language contained in the affidavits, but did not consider the entire legal standard of whether "each juror severally" agreed to be bound as required by the foregoing cases. Therefore, the second element requiring application of the complete legal standard was not considered. Accordingly, the trial court did not fully consider the second element of the inquiry.

Therefore, the case is remanded for the district court's determination of whether the verdict was based on adequate deliberations and for consideration of the first set of affidavits in light of the well established standard that in order to find jury misconduct it must be clearly shown that each juror joining in the verdict severally agreed in advance to be bound by the averaged figures. Accordingly, we vacate the order of the district court granting a new trial on the ground of jury misconduct and remand for further consideration.

### III.

International Harvester claims that a new trial is not necessary because other errors at trial entitle it to judgment as a matter of law. Specifically, International Harvester asserts that Watson was aware of the danger that the augers could cause and, therefore, it had no duty to warn of an open and obvious danger. International Harvester also argues that the alleged inadequate warning was not a proximate cause of the accident and that Watson's negligence exceeded its negligence. Based upon certain statements from Watson's deposition indicating his knowledge of the danger, International Harvester filed motions for summary judgment, directed verdict and judgment notwithstanding the verdict. All of International Harvester's motions were denied by the trial court. Based upon our review of the record, we affirm the district court's ruling.

A motion for judgment notwithstanding the verdict is governed by Rule 50(b) of the Idaho Rules of Civil Procedure. We have consistently held that a motion for judgment notwithstanding the verdict will not be granted if there is substantial evidence to support the verdict once it has been returned. "Substantial" does not mean that the evidence must be uncontradicted but only that the evidence must be of a sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977); *Hibbler v. Fisher*, 109 Idaho 1007, 712 P.2d 708 (Ct.App.1985).

A judgment notwithstanding the verdict should be granted when there is no substantial competent evidence to support the verdict of the jury. *Brand S Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981).

In *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974), we adopted the standard as applied in the federal courts and held "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party." 95 Idaho at 736 n. 2, 518 P.2d at 1198 n. 2, quoting from 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1971).

In considering a motion for judgment notwithstanding the verdict we have consistently held that the trial judge is not free to weigh the evidence or pass on the credibility of witnesses and make his or her own separate findings of fact and compare them to the jury's findings. *Gmeiner v. Yacte*, 100 Idaho 1, 592 P.2d 57 (1979). Rather, the trial court must view all of the evidence and all inferences drawn therefrom in favor of the non-moving party, and decide whether there was substantial evidence to justify submitting the case to the jury. Judgment notwithstanding the verdict is proper only when there can be but one conclusion as to the verdict that reasonable minds could have reached and when that conclusion does not conform to the jury verdict. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984).

In determining whether a judgment notwithstanding the verdict should have been granted we apply the same standard that the trial court would have applied. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Hence, we must review the record of the trial below and draw all inferences from the evidence in a light most favorable to the non-moving party to determine whether there was substantial evidence to justify submitting the case to the jury. 111 Idaho at 764, 727 P.2d at 1193.

### A.

A significant portion of Watson's case was whether International Harvester and Dokken adequately warned about the dangers of the combine. Specifically, Watson alleged that the warning decal on the grain tank was inadequate and that it should have included a graphical representation of a leg caught in the auger. International Harvester alleges that the warning on the combine was adequate and even if it was not adequate the danger was open and obvious and therefore, it should not be held liable for Watson's injuries and damages.

The following is an excerpt from the deposition of Larry Watson which is relied upon by International Harvester. The following deposition testimony was read at trial concerning Watson's knowledge of the danger that the combine could cause.

Q. But you did know that the augers were dangerous?

A. Yes, sir.

Q. And did you know particularly that opening was dangerous?

A. Yes, sir.

Q. And tried, ... as you got in there, you were thinking about it and you were trying to position yourself away from it?

A. Yes, sir.

Q. What did you think would happen to you if you got your foot in that opening?

A. I'd get hurt.

Q. Did you think what would happen to you is about what happened?

A. I didn't know at that time when I was thinking about it, no.

Q. But you knew it would do you great injury?

A. Yes, sir.

Q. Did you know it might result in your losing your leg?

A. Yes, sir.

Q. Perhaps even death?

A. Yes, sir.

Q. What did you think might happen if you got your foot in what I'm calling

the side space, do you think that was dangerous, too?

A. Yes, sir.

Q. Did you think you might lose some toes?

A. Yes, sir.

Q. Maybe a foot?

A. Yes.

Q. Perhaps your life?

A. Yes, sir.

R., Vol. 14, at 1857–59.

International Harvester claims that because Watson knew of the specific danger that the augers posed, it had no further duty to warn Watson. It bases its argument on *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54 (1975). In *Mico Mobile* we stated:

> A failure to warn may be the basis for recovery under strict liability. That is, "where the defendant has 'reason to anticipate that danger may result from a particular use' of his product and he fails to give adequate warnings of such a danger, 'a product sold without such warning is in a defective condition.'" This rule is, however, limited to situations where the danger is not obvious. However, if the danger is obvious, or if the danger is known to the person injured, the duty to warn does not attach.

97 Idaho at 414, 546 P.2d at 60 (citations omitted). International Harvester argues there is no logical reason why the rule stated in *Mico Mobile* should be applied any differently in a negligence case. International Harvester relies on Watson's deposition testimony to show that he knew of the danger the auger posed and argues that because of Watson's knowledge the

judgment notwithstanding the verdict should be entered in its favor.

However, the common law open and obvious danger doctrine is now controlled by statute. This was recognized in *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989), in the context of a premises liability case, where we rejected the doctrine of open and obvious danger as an absolute bar to recovery. We held that "under the umbrella of comparative negligence ... the open and obvious danger doctrine ... has been abolished legislatively through the adoption of I.C. § 6–801." *Harrison*, 115 Idaho at 593, 768 P.2d at 1326.[10]

■ Likewise, we hold that the provisions of I.C. § 6–1405 limit and define the open and obvious danger doctrine in this products liability case. I.C. § 6–1405 states, in part:

> (1) Failure to discover a defective condition.

> . . . . .

> (b) Claimant's failure to observe an obvious defective condition. When the product seller proves by a preponderance of the evidence that the claimant, while using the product, was injured by a defective condition that would have been obvious to an ordinary reasonably prudent person, the claimant's damages shall be subject to reduction.

Thus, it is clear that I.C. § 6–1405 incorporates the doctrine of open and obvious danger as a component part of the comparative negligence theory and adopts the objective standard of duty to warn to the "ordinary reasonably prudent person." An objective standard makes non-dispositive an inquiry into the subjective knowledge of the user. As a policy matter, the standard

---

**10.** In addition to our holding in *Harrison v. Taylor,* we have held that "[T]he scope of I.C. § 6–801 is broad. It is not limited to certain types of actions; it is not limited by exceptions. Rather, it covers any action in which the plaintiff is seeking to recover on grounds of negligence." *Salinas v. Vierstra,* 107 Idaho at 989 n. 14, 695 P.2d at 374 n. 14. In *Salinas* the Court noted the relationship between I.C. § 6–801 and I.C. §§ 6–1401 through 6–1409.

The extent of the Idaho legislature's commitment to a comparative fault system for allocating liability is further highlighted by

the 1980 adoption of the Idaho Product Liability Reform Act. I.C. § 6–1401 through –1409. Section 6–1404 of the Act states that a person's recovery may be reduced in the proportion to which the plaintiff was responsible for the harm suffered. This is noteworthy, for it indicates the legislature's intent in applying principles of comparative negligence not only in the field of negligence law, but also in the field of products liability law, which has heretofore operated under principles of strict liability.
*Id.*

is used to determine whether the danger involved is so obvious that it is unreasonable to impose on the manufacturer a duty to warn. As a result, a product with a danger that is obvious to a particular user may not entirely relieve the manufacturer of a duty to warn of that danger or defect. Instead, it will simply be one of the factors that the jury may consider after being instructed to consider the obviousness of the danger in determining the degree of negligence of Watson and International Harvester.

In *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 730 P.2d 1005 (1986), we held that where the undisputed facts lead to only one reasonable conclusion, the question of whether the manufacturer has a duty to foresee, protect or warn against product misuse is one of law for determination by the court. While we continue to adhere to this rule, we find it inapplicable in this case because of the conflicting evidence contained in the record. Where there is conflicting evidence, we are required to construe all of the evidence in favor of the jury verdict, including all reasonable inferences therefrom, to determine whether there is substantial evidence to support the verdict. *See Sun Valley Shamrock Resources v. Travelers Leasing*, 118 Idaho 116, 794 P.2d 1389 (1990).

In this case Watson presented evidence that there was an inadequate "caution" decal on the combine and that a "danger" symbol and a graphical decal showing a person's leg caught in an auger should have been used. Watson also produced evidence that the cost to provide appropriate warning decals was minimal. The plaintiff also offered evidence that he had read the combine operator's manual and that it inadequately described how to break up bridging of the seed in the tank while minimizing exposure to the augers. The plaintiff offered further evidence that the operator's manual failed to indicate that the combine should be adjusted for grass seed harvesting and that the cost of an additional page on grass seed harvesting in the operator's manual with appropriate safety information would have been minimal. Finally, the plaintiff also offered evidence that the grain tank was at least three quarters full at the time of the accident and argued at trial that his position in the grain tank would appear safe and reasonably secure to a farm worker.

Construing all of the evidence in favor of Watson, as we are required to do, we cannot hold as a matter of law that the danger imposed by the auger was so plain, open and obvious that it precluded a duty to warn. Consistent with our holding in *Harrison v. Taylor* and I.C. § 6–1405, we hold that it was for the jury to consider the obviousness of the danger in determining the degree of negligence of Watson and International Harvester. Likewise, we hold that it was for the jury to consider and determine whether International Harvester and Dokken acted with ordinary care in the manufacture and distribution of the combine.

B.

International Harvester argues in this case that Watson specifically knew about the danger that the auger posed. It therefore argues that warning him would have been to no avail and was not the proximate cause of his injuries.

In order to recover damages in a products liability action based on negligence the plaintiff must prove that 1) he or she was injured by the product, 2) the injury was the result of a defective or unsafe product, and 3) that a defect existed when the product left the control of the manufacturer. *Henderson v. Cominco Am., Inc.*, 95 Idaho 690, 518 P.2d 873 (1973); *see also Complaint of Diehl*, 610 F.Supp. 223 (D. Idaho 1985). Regardless of the theory under which recovery is sought in a products liability action, a plaintiff must establish that the injury is causally related to defendant's act or omission. *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54 (1975). It is well established in this jurisdiction that the failure to warn can be a basis for recovery in a products liability case. *Id.; Rindlisbaker v. Wilson*, 95 Ida-

ho 752, 519 P.2d 421 (1974). Thus, Watson is required to prove by a preponderance of the evidence that International Harvester's failure to warn or its alleged inadequate warning was a proximate cause of his injuries.

■■■■■ In light of the adoption of comparative negligence in Idaho, the adequacy of a warning is a factor to be considered and determined by the jury. Where there is substantial competent evidence that a manufacturer may have inadequately warned potential users of a danger or defect the user's percentage of comparative negligence will determine the reduction in the plaintiff's damages to the extent that the plaintiff did not act as an ordinary reasonably prudent person under the circumstances. *See* I.C. § 6–1405(2)(a). Moreover, as will be addressed below, with the adoption of comparative negligence, the assumption of risk defense as an absolute bar to recovery has been eliminated. *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321 (1989); *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985).

In this case Watson testified that he was aware of the danger that the auger posed and that he knew if he were to get in the grain tank and have one of his legs caught in the augers he could be seriously injured or even possibly lose his life. However, we cannot hold as a matter of law that Watson's knowledge absolutely bars a jury finding of proximate cause due to a failure to adequately warn in this case. First of all, the determination of negligence and proximate cause is a jury question. *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984); *Nelson v. Northern Leasing Co.*, 104 Idaho 185, 657 P.2d 482 (1983); *Robinson v. Westover*, 101 Idaho 766, 620 P.2d 1096 (1980). Secondly, viewing the evidence in a light most favorable to Watson we cannot hold as a matter of law whether a better warning decal or whether appropriate safety information in the owner's manual may have deterred or prevented Watson's actions. Therefore, rather than second-guess the jury's determination of proximate cause from failure to warn, we affirm the trial judge's decision denying International Harvester's motion for judgment notwithstanding the verdict.

## C.

■■■■■ International Harvester argues that Watson's negligence was, as a matter of law, greater than its negligence. International Harvester claims that because Watson knew about the danger, it was his own negligence that caused his injuries rather than any allegedly negligent design.

However, the evidence in this case, when viewed in the light most favorable to Watson, supports the jury's verdict. International Harvester stipulated that it was technologically and economically feasible to reduce the size of the auger cover opening, in which Watson's foot was caught, from four inches to 1.3 inches and still have a functional and salable machine. In addition, Watson presented evidence of the applicable safety standards and expert opinion testimony that these standards required the four inch gap in the auger cover to be guarded to the extent possible. Watson presented evidence at trial that International Harvester had never field tested the combine for grass seed harvesting and that the defendant's safety department had never reviewed the safety of the grain tank or the feed augers nor identified a safe servicing area to unbridge grass seeds. There was also evidence presented that International Harvester's safety department had also failed to review the necessity of the four inch gap in the auger cover opening. Watson presented evidence that the operator's manual failed to instruct on adjustments necessary for safe grass seed harvesting and that a farmer would not know how to redesign the combine for safe seed harvesting. Watson also presented evidence that International Harvester's chief engineer responsible for the safety design of the combine was unaware of bridging problems in the grain tank when the combine was used to harvest grass seed. Finally, evidence was also presented that guard rails and perimeter rails were on other International Harvester combines even though they were not used on the combine which injured Watson.

After carefully reviewing the record, we therefore hold that there was sufficient, albeit conflicting, evidence presented at trial to support Watson's claims. Viewing all of the evidence in the light most favorable to Watson we hold that the jury's verdict is supported by substantial evidence and hold that it was not error for the trial court to deny International Harvester's motion for judgment notwithstanding the verdict.

IV.

International Harvester also cross-appeals and claims that the district court should have granted its motion for a new trial because of other errors committed at trial. First, International Harvester claims that the trial court inappropriately allowed evidence and testimony concerning subsequent remedial measures taken by International Harvester to make the combine safe. Secondly, International Harvester claims that the trial court should have granted a mistrial when a witness testified concerning other combine accidents.

A.

Pursuant to a motion in limine the trial court ordered that evidence of subsequent design changes in the combine would not be allowed into evidence. However, the district court subsequently modified that order to allow such evidence for impeachment purposes. In addition, the record demonstrates that International Harvester stipulated it was technologically and financially feasible to change the auger cover from four inches to 1.3 inches and to make certain graphical changes in the combine's warning stickers.

The first item of evidence or testimony that Watson offered at trial was the deposition of Robert Francis, an International Harvester engineer. Certain portions of that deposition concerned subsequent design changes applicable to both the warning signs and the auger cover. It was argued that Francis contradicted himself in part of the deposition concerning the design changes. The trial court allowed these portions of the deposition to be read to the jury and gave a limiting instruction to the jury informing them that the evidence concerning design changes was for impeachment purposes only.[11]

International Harvester claims that using the deposition of Francis to admit evidence of subsequent remedial changes for the purpose of impeachment was a subterfuge that in essence violated the trial court's order. See I.C. § 6–1406; I.R.E. 407. International Harvester also argues that even if the deposition testimony could be admitted for the purpose of impeachment, its probative value did not substantially outweigh its prejudicial effect, and therefore, it should not have been admitted. See I.R.E. 403.

Under I.C. § 6–1406 and I.R.E. 407 evidence of subsequent remedial measures are inadmissible to prove negligence, culpable conduct or product defect. In *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983), we discussed the relevancy of subsequent remedial changes in design toward negligence, the unfairness of using evidence that a manufacturer has improved his product against him, and the policy of encouraging improved designs.

However, the rule does not bar the admission of remedial measures for the purpose of "proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." I.R.E. 407. In two pre-I.R.E. cases, *Otts v. Brough*, 90 Idaho 124, 409 P.2d 95 (1965), and *Zenier v. Spokane International Railroad*, 78 Idaho 196, 300 P.2d 494 (1956), we held that

---

11. The limiting jury instruction states:

Ladies and gentlemen, certain portions of Mr. Francis's deposition that will be read to you concern that change in the design of the International Harvester. These segments are only admissible against International Harvester for the purposes of the impeachment of the credibility of Mr. Francis. They are not admissible for the purpose of proving that the design of

the harvester in question was defective and furthermore, evidence of any such design difference is not admissible to prove negligence or culpable conduct in connection with the accident in this case. You're further instructed that such evidence of design change is not admissible as against Dokken Implement for any reasons whatsoever.

evidence of subsequent repairs was material as bearing upon the recognition of a defect which the tortfeasor was duty-bound to remedy. However, we never have had an occasion to determine the limits of I.R.E. 407 and I.C. § 6–1406 in allowing evidence of subsequent remedial measures for impeachment purposes.

■ If it appears that a party is seeking the introduction of evidence of subsequent remedial measures to imply culpability under the guise of impeachment or any other purpose, certainly the trial court should disallow the evidence. However, the trial court is in the best position to assess the prejudicial effect of the evidence. If the trial court is satisfied that the evidence has substantial probative value on the issue on which it is introduced and that the issue is genuinely in dispute it should be allowed. Furthermore, a limiting instruction can aid the jury. But, if the trial court concludes that factors of undue prejudice, confusion of issues, misleading the jury or a waste of time outweigh the probative value of the evidence it should properly be excluded. *See* 10 James W. Moore & Helen I. Bendix, *Moore's Federal Practice* § 407.02, at IV–153 (2d ed. 1991).

In the instant action the district court was in the best position to determine and assess the effect of the evidence in this case. During his deposition, Francis, the project engineer with responsibility for design of the combine, was asked whether changing the auger cover from four inches to 1.3 inches was feasible. In response, he indicated that such a change would affect the function of the combine and that it would be disadvantageous "[i]n the eyes of the market." He testified further in his deposition that he did not believe that International Harvester had ever reduced the auger cover from four inches to 1.3 inches. Francis later acknowledged that International Harvester had changed the auger cover gap, and that he had participated in the design analysis required to make the change. Francis also testified that International Harvester never marketed a machine with an opening under two inches, but later admitted that some machines had

a smaller opening. Francis then testified that the function of the machine was inhibited when the space was reduced in the auger cover. However, when examined as to why the auger cover gap was reduced, Francis asserted the change was not related to safety. Later Francis acknowledged that the risk of losing a leg was reduced by reducing the size of the auger cover gap.

In considering this testimony, the trial court found that Francis' prior deposition testimony had been impeached. The trial court gave the limiting instruction that the portions of Francis' deposition testimony read to the jury were only for the purpose of impeachment and not for the purpose of proving that the combine's design was defective or to prove negligence or culpable conduct in connection with Watson's accident.

Our review of the record also demonstrates that the trial court favorably considered defendants' relevancy objections at trial and disallowed several portions of Francis' allegedly impeaching testimony on the issue of adequate warnings on the basis that the unfair prejudice substantially outweighed the probative value of the evidence.

After reviewing the record on appeal we cannot conclude, under the circumstances presented here, that the trial court abused its discretion in allowing a portion of Francis' deposition testimony to be presented to the jury for the purpose of impeachment or that the court failed to weigh the probative value of the evidence allowed against its unfair prejudice. Accordingly, we find no error and affirm.

**B.**

International Harvester moved for a mistrial when John Sevart, a safety engineering expert, testified about other accidents and injuries caused by combines. International Harvester claims that this unsolicited testimony violated the trial court's in limine order and was non-responsive. The trial court denied the motion for mistrial and gave a cautionary instruction to the jury. The trial court explained that the comment was incidental in nature and "did not refer

to any accidents that were caused by an International Harvester harvester."

A motion for mistrial is directed to the trial court's sound discretion, and its ruling will not be disturbed unless there is shown such an abuse of discretion that a party's rights are prejudiced. *Bratton v. Slininger,* 93 Idaho 248, 460 P.2d 383 (1969); *Chard v. Bowen,* 91 Idaho 521, 427 P.2d 568 (1967). In this case, it is clear that the trial court considered the motion and determined that it did not prejudice International Harvester sufficiently to warrant a mistrial.

The response was elicited from defendants during cross-examination in response to the defendant's question of what dangers, given the number of possible dangers associated with the use of a combine, Sevart considered to be more serious than the auger accident at issue in this case. The witness responded that the "grimmest accidents are with the header, particularly the corn header" and that "[t]he second most critical accidents I have investigated is [sic] people cut in the cross-feed augers in the grain tanks." In our review of the record and the trial court's limiting instruction, we see no abuse of discretion in denying the motion for mistrial and affirm the district court's ruling. *See Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978).

## V.

International Harvester claims that some of its requested jury instructions regarding assumption of the risk, known and obvious dangers, and product misuse should have been given. International Harvester also complains that instructions regarding a manufacturer's duty of care were unnecessarily repetitive, and finally, International Harvester claims that it was denied a jury of twelve persons when three persons failed to deliberate after initially deciding it was not negligent. For these reasons, International Harvester claims reversible er-

ror was committed in the district court. We review these questions in turn.

## A.

International Harvester claims that the district court should have given its requested instructions on the elements of assumption of the risk and product misuse. These requested instructions were IDJI 1020 and 1019, respectively.

In reviewing instructions to the jury we are required to determine whether the jury instructions as a whole adequately present the issues and state the applicable law. *Matter of Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989); *Suitts v. First Sec. Bank of Idaho, N.A.,* 110 Idaho 15, 713 P.2d 1374 (1985). Moreover, reversible error only occurs when an instruction misleads the jury or prejudices a party. *Leazer v. Kiefer,* 120 Idaho 907, 821 P.2d 957 (1991); *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985). Finally, the refusal to give a particular requested instruction is not erroneous where the substance of the proposed instruction is covered elsewhere in the instructions given. *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983); *Garrett v. Nobles,* 102 Idaho 369, 630 P.2d 656 (1981).

Watson cites *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989), and *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985), for the proposition that the defense of assumption of the risk is no longer a viable defense in Idaho. However, in *Harrison* and *Salinas,* we did not hold that assumption of the risk was no longer a viable defense. Rather, we held that the defense would no longer act as an absolute bar to recovery. It is clear that the Idaho Product Liability Reform Act, I.C. § 6–1401 through § 6–1409, allows the defense of assumption of the risk and product misuse as a component of comparative negligence. *See* I.C. § 6–1404 and § 6–1405.[12] As we indicated in *Salinas,* "[t]he

---

12. I.C. § 6–1404 states:
 Comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for product

liability resulting in death or injury to person or property, if such responsibility was not as great as the responsibility of the person against whom recovery is sought, but any

types of issues raised by a plaintiff's non-express assumption of risk are readily handled by resort to contributory negligence principles. Thus, such issues should be discussed in terms of contributory negligence, not assumption of risk, and applied accordingly under our comparative negligence laws." 107 Idaho at 989, 695 P.2d at 374.

In this instant case the trial court's instructions did not include a specific instruction informing the jury of these two defenses. Rather, the trial court's instructions to the jury included instructions concerning International Harvester's general affirmative defense that Watson acted negligently and failed to use ordinary care for his own safety.[13] Although the instructions to the jury did not use the words "assumption of the risk" or "misuse," the jury instructions given adequately explained Watson's duty of due care and International Harvester's defense of compa-

rative responsibility. Accordingly, we find no error.

### B.

██ International Harvester requested an instruction that defined product misuse as the failure to follow directions and warnings provided by the seller. Ordinarily litigants have a right to have the jury adequately instructed concerning every reasonable claim or defense supported by the pleadings and the evidence. *Garrett Freightlines v. Bannock Pavement Co.,* 112 Idaho 722, 735 P.2d 1033 (1987). Obviously, instructions which are not legally sound should not be given. *Everton v. Blair,* 99 Idaho 14, 576 P.2d 585 (1978).

██ International Harvester cites *Chisholm v. J.R. Simplot Co.,* 94 Idaho 628, 495 P.2d 1113 (1972), as authority for its requested instruction. However, *Chis-*

damages allowed shall be diminished in the proportion to the amount of responsibility attributable to the person recovering.
I.C. § 6–1405 then sets forth the conduct affecting comparative responsibility and includes the following:
(1) Failure to discover a defective condition.
....
(b) Claimant's failure to observe an obvious defective condition. When the product seller proves by a preponderance of the evidence that the claimant, while using the product, was injured by a defective condition that would have been obvious to an ordinary reasonably prudent person, the claimant's damages shall be subject to reduction.
....
(2) Use of a product with a known defective condition.
(a) By a claimant. When the product seller proves, by a preponderance of the evidence, that the claimant knew about the product's defective condition, and voluntarily used the product or *voluntarily assumed the risk of harm from the product,* the claimant's damages shall be subject to reduction to the extent that the claimant did not act as an ordinary reasonably prudent person under the circumstances.
....
(3) Misuse of a product.
(a) "Misuse" occurs when the product user does not act in a manner that would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstances.
(b) When the product seller proves, by a preponderance of the evidence, that product mis-

use by a claimant, or by a party other than the claimant or the product seller has proximately caused the claimant's harm, the claimant's damages shall be subject to reduction or apportionment to the extent that the misuse was a proximate cause of the harm. (Emphasis added.)

13. The trial court's instructions to the jury concerning International Harvester's affirmative defenses included the following. Jury Instruction No. 11 stated in part:

In this case defendants have asserted affirmatively that the plaintiff Larry Watson was negligent. Defendants have the burden of proving each of the following propositions:
1. That the plaintiff Larry Watson acted, or failed to act, in one of the ways claimed by the defendants and in so acting, or failing to act, the plaintiff was negligent;
2. That the negligence of the plaintiff was a proximate cause of the injury claimed to have been suffered by the plaintiff.

Jury Instruction No. 9 defined negligence as the failure to do something which a reasonably careful person would do or would not do. Instruction No. 18 read in part:

The test is whether—in light of all the circumstances—a reasonably prudent party would have anticipated that injury was likely to result to someone or *himself* from the performance or non-performance of the act. (Emphasis added.)

Instruction No. 19 then stated in part, "[i]t was the duty of Larry Watson to use ordinary care for his own safety."

*holm* is distinguishable because it dealt with product warranty law rather than the theories as presented by this case. A user's failure to follow directions is another aspect of comparative responsibility encompassed by the court's given instructions. We hold it was not error for the trial court to refuse the requested instruction. When considering the instructions as a whole, we conclude that the issues were adequately presented and the applicable law stated.

### C.

International Harvester requested a jury instruction advising the jury that if a danger is open and obvious to a product user there is no need for a manufacturer to provide a warning, and that the failure to warn does not make the product defective. In support of its argument it cites *McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983); *Mico Mobile Sales v. Skyline Corp.*, 97 Idaho 408, 546 P.2d 54 (1975); and *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974). Those cases stand for the proposition that the "duty to warn is limited to situations wherein the danger is not obvious." *McBride v. Ford Motor Co.*, 105 Idaho 753, 761, 673 P.2d 55, 63 (1983). As discussed above, the open and obvious exception to the duty to warn is normally to be considered as part of the fact finder's assessment of comparative negligence. The court gave Instruction No. 20 to the jury which specifically outlined the duty to warn with the obviousness exception.[14] As this instruction adequately states the duty to warn, we hold that it was not error for the trial court to deny the defendants' requested instruction.

### D.

■ International Harvester asserts that Instruction Nos. 17 and 19, given by the trial court, unnecessarily repeated and emphasized the manufacturer's duty of care.[15] Repetition of instructions is improper if its effect is to give undue prominence or emphasis to a particular theory or view. *Addy v. Stewart*, 69 Idaho 357, 207 P.2d 498 (1949). However, in other cases repetition may be necessary in order to clarify the law. In *Stuchbery v. Harper*, 87 Idaho 12, 390 P.2d 303 (1964), we stated:

> In explaining and clarifying the issues and defining terms in an action involving negligence, contributory negligence, proximate cause, and burden of proof, some repeated reference to these terms and issues is necessary. In his instructions the trial judge should avoid unnecessary repetition and make the instructions as brief and concise as possible. However, clarity is of paramount importance and is not to be sacrificed to brevity.

*Stuchbery*, 87 Idaho at 20, 390 P.2d at 307 (citations omitted).

■ Although it is clear that both Instruction Nos. 17 and 19 contained language concerning International Harvester's duty of care, we hold that this repetition was not prejudicial. Instruction No. 19 stated the duty of care of both parties fully. While Instruction No. 17 repeated the duty of care for a manufacturer, any

---

14. Jury Instruction No. 20 stated:
 A manufacturer or merchant who supplies a product, directly or through another, is negligent for failure to warn of any dangers of using the product if he:
 1. Knows or has reason to know that the product is or is likely to be unreasonably dangerous while being used with ordinary care; and
 2. Has no reason to believe that those for whose use the product is supplied will realize its unreasonably dangerous condition; and
 3. Fails to exercise ordinary care to warn those for whose use the product is supplied of the danger or of the facts which make the product likely to be unreasonably dangerous.

15. Jury Instruction No. 17 reads:
 The manufacturer of a product is negligent if he does not use ordinary care in the design of that product to avoid an unreasonable risk of foreseeable injury to a person using the product with ordinary care.
 Jury Instruction No. 19 reads:
 It was the duty of the defendants, INTERNATIONAL HARVESTER, INC. and DOKKEN IMPLEMENT CO., INC, before and at the time of the occurrence to use ordinary care for the safety of LARRY WATSON. It was the duty of Larry Watson to use ordinary care for his own safety.
 (Capitalization in original.)

undue prominence given by this instruction was offset by given Instruction No. 9.[16] Instruction No. 9 defined negligence as the failure to use the ordinary care that a "reasonably careful person would use under circumstances similar to those shown" by the evidence. While Instruction No. 9 may have been meant to define "ordinary care" generally, the instruction's reference to a "person," rather than indicating that it also applied to a manufacturer, reemphasized Watson's duty of care. We hold that any repetition was not prejudicial to either party and therefore we hold it was not reversible error.

### E.

■■■ International Harvester argues that it was denied a jury of twelve jurors when three of the jurors who voted "no" as to International Harvester and Dokken's negligence abstained from further discussions concerning the amount of negligence and damages to be assessed to the parties. We disagree. Article 1, Section 7 of the Idaho Constitution specifically and clearly states that "three-fourths of the jury may render a verdict." The verdict in this case was clearly rendered by nine (three-fourths) of the twelve jurors and meets the constitutional requirements. There was no error because only nine jurors assented to the final verdict. *See Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988).

■■■ Even though the three-fourths constitutional requirement was met in the instant case, International Harvester contends that the percentage of negligence and the amount of damages were artificially skewed because the three jurors who failed to participate in the averages initially found International Harvester to be without negligence. Therefore, International Harvester asserts that if these jurors had

participated in the deliberations the verdict would have been different.

While the verdict undoubtedly would have been different had all the jurors participated, this is not a basis for reversible error. Simply put, the law only requires that nine of the twelve jurors, or three-fourths of the jury members, render a verdict. In *Tillman v. Thomas*, 99 Idaho 569, 585 P.2d 1280 (1978), we discussed whether the same nine or a different nine had to agree on all interrogatories presented in a special verdict and held that any nine jurors could agree to different interrogatories in the special verdict form. Given our holding in *Tillman*, no error occurred in the instant case because the same nine jurors voted consistently throughout the special verdict form in this case.

■■■ International Harvester also argues that the reason three jurors failed to participate in the deliberations and vote on Watson's comparative negligence and damages was that the jurors misunderstood the special verdict form. This argument is based on the jurors' affidavits submitted by International Harvester in an attempt to prove a quotient verdict. As such, the argument of International Harvester is based on juror information that cannot be considered by the trial court. Because the reason a juror abstained from deliberation is unrelated to whether the verdict was one of chance or any of the other exceptions governed by I.R.E. 606(b), the general rule prohibiting evidence of "any matter or statement occurring during the course of the jury's deliberations" is applicable. I.R.E. 606(b). Just as the trial court may not consider the affidavit of juror Hines, who indicated that he understood that the jury's damage award had already been reduced by the percentage of Watson's negligence and would not be reduced further, a court may not consider these affidavits in-

---

16. Jury Instruction No. 9 reads:

When I use the word "negligence" in these instructions, I mean the failure to use ordinary care in the management of one's property or person. The words "ordinary care" mean the care a reasonably careful person would use under circumstances similar to those shown by the evidence. Negligence may thus consist of the failure to do some-

thing which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence. The law does not say how a reasonably careful person would act under those circumstances. That is for you to decide.

dicating reasons that certain jurors abstained from the deliberations. Therefore, we hold that the defendants were not denied a fair trial nor were they prejudiced by the fact that only nine jurors assented to the final verdict. Accordingly, the trial court did not abuse its discretion for failing to grant a new trial on this issue.

## VI.

■ International Harvester complains of improper arguments and offers of evidence at trial and requests that in the event of a retrial, plaintiff's counsel be directed to not make those improper arguments and offers. Specifically, International Harvester complains that Watson used a per diem argument in his opening statement, made repeated efforts to offer a treatise into evidence and made repeated reference to International Harvester's stipulation that reducing the auger cover opening to 1.3 inches was feasible. We have reviewed the record and hold that these arguments and offers of evidence do not constitute reversible error. *See Tucker v. Union Oil Co. of California,* 100 Idaho 590, 603 P.2d 156 (1979); *Meissner v. Smith,* 94 Idaho 563, 494 P.2d 567 (1972). It is within the discretion of the trial court to control the contents of opening statements, *Kerby v. Oregon Shortline R. Co.,* 45 Idaho 636, 264 P. 377 (1928), and limit the number of requests for evidence and the number of references to a stipulation which can be made. I.R.E. 403. Accordingly, we find no error.

## VII.

In the event of a new trial, Dokken appeals the decision of the district court to include Dokken in the new trial order notwithstanding the jury verdict finding it to be without any comparative negligence. In its order dated May 27, 1987, the district court indicated that because it found the verdict to be tainted by jury misconduct, a new trial would be proper for all of the parties involved. The trial court stated:

[T]he misconduct of the jury tainted the verdict in its entirety and in such manner that this Court is unable to determine

with any degree of certainty what the jury's verdict as it pertained to Defendant Dokken Implement company would have been absent the misconduct in question.

After reviewing the record we hold that the trial court's ruling was not error and there has not been a showing of an abuse of discretion.

■ The Idaho Rules of Civil Procedure allow a trial court to grant a new trial to all or any of the parties and on all or part of the issues. I.R.C.P. 59(a). Moreover, the law is well established that the trial court's determination whether to include some or all of the parties is discretionary, *Smallwood v. Dick,* 114 Idaho 860, 761 P.2d 1212 (1988), as is the determination of the issues to be retried after the granting of a new trial, *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977). Further, we will not overturn a trial court's determination on a motion for new trial absent a manifest abuse of discretion. *Chenery v. Agri–Lines Corp.,* 115 Idaho 281, 766 P.2d 751 (1988); *Grimes v. Green,* 113 Idaho 519, 746 P.2d 978 (1987); *Sanchez v. Galey,* 112 Idaho 609, 733 P.2d 1234 (1986); *Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986); *Wise v. Fiberglass System, Inc.,* 110 Idaho 740, 718 P.2d 1178 (1986); *Stout v. Westover,* 106 Idaho 533, 681 P.2d 1008 (1984).

■ In reviewing discretionary acts of the trial court we note that the test for determining whether a party can be excluded from an order for a new trial is whether there is a clear showing that the issues in the case are so distinct and separable that a party may be excluded without prejudice. *Gasoline Prods. Co. v. Champlin Ref. Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Because of this standard, in *Clark v. Foster,* 87 Idaho 134, 391 P.2d 853 (1964), we held that it was error to order a new trial based on jury misconduct limited to the plaintiff's first cause of action but excluding a new trial on the plaintiff's third cause of action. We stated in *Clark* that the "misconduct of the jury vitiated the entire verdict, not just one cause of action." 87 Idaho at 143, 391 P.2d at 858.

Dokken argues that *Clark v. Foster* is distinguishable on the ground that in *Clark* the jury determined the percentage of negligence on each cause of action by the use of a quotient or averaged figure. Dokken argues that in the present case the special verdict form asked whether there was any negligence on the part of Dokken under all causes of action. Dokken also cites *Halverson v. Anderson*, 82 Wash.2d 746, 513 P.2d 827 (1973) and *Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978) in support of its position. Because the special verdict form in the instant action indicates that all twelve of the jurors voted "no" to this question, Dokken argues that the chance verdict only concerned the apportionment of negligence and damages between Watson and International Harvester, and not Dokken. Therefore, Dokken contends that the trial court abused its discretion by including it in the new trial order.

 Because the jury was asked to determine the amount of negligence apportionable between Dokken, International Harvester and Watson on all issues, Dokken fails to acknowledge that the issues before the jury were not separable and distinct. This inseparability between the issues and the parties is what prompted the district court to include Dokken in its order for a new trial. At the February 6, 1986, oral hearing which included the motion to include Dokken in the new trial order, the district court stated:

> Whatever I rule on with reference to the motion for a new trial, Dokken will be with us, and that is to say if I do find jury misconduct, it is my feeling that the jury misconduct at hand has tainted the entire proceedings and Dokken, being a part of those proceedings, is going to be required to stand trial again. Because I won't, in a situation where we have jury misconduct, be able to segregate what they did right with the reference to one party and what they did wrong with reference to another party. We have a very complicated process of what goes on in the jury room, as we well know now, an I'm not going to say the misconduct occurred only as to International Harvester and not as to Dokken.

While we do not hold that all cases of jury misconduct necessarily require that a new trial be conducted as to all parties, we do hold that based upon our review of the record in the instant case, it was not an abuse of discretion for the district court to so order a new trial for all parties in this instant case. This was a lengthy and complicated trial dealing with many interrelated issues. Therefore, we hold that the trial court did not abuse its discretion in ordering a new trial as to all parties in the event that upon remand the court determines that the alleged jury misconduct necessitates a new trial.

## VIII.

For the reasons set forth herein, we vacate the order of the district court granting International Harvester's motion for a new trial and remand in order that the court consider the first set of juror affidavits in light of the standard provided herein on evaluating jury conduct. We affirm the order of the trial court denying International Harvester's motion for judgment notwithstanding the verdict and hold that the district court did not commit reversible error on the other issues. Finally, we hold that it was not an abuse of discretion to include Dokken as a party in the order of a new trial.

Accordingly, we remand the cause for further proceedings consistent with this opinion. Each party to bear its own costs.

BISTLINE, JOHNSON and McDEVITT, JJ., concur.

BAKES, C.J., concurs specially.

BAKES, Chief Justice, concurring specially:

The Court today could just as easily have concluded on this record that the trial court found that the jurors did "severally" agree to be bound. *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964). The record in this case would certainly have supported such a finding. However, I join the Court's remand to allow the trial court to explicitly so find in order to "assure that [the] jury

participate in 'solemn deliberation' ... and avoid a verdict that was irrationally skewed by a minority of 'inveterate juror[s].' " *Ante* at 658, 827 P.2d at 671.

Since this matter is being remanded for the trial court to reconsider its granting of the new trial, I write to point out what I perceive to be an even more serious problem with the jury's conduct in this case. The affidavits of all the jurors indicate that when they began to deliberate there was a wide variance of opinions among the jurors over whether the defendant International Harvester was even negligent at all. Sev-eral of the jurors were of the opinion that International Harvester was not negligent. For some reason, the jury misconstrued the instructions in the special verdict and con-cluded that those jurors who did not think that there was any negligence on the part of International Harvester should not par-ticipate any further in the jury's delibera-tions. The special verdict instruction, which followed the questions regarding whether the two defendants were negli-gent, stated: "If you answered both of the above questions 'No,' you will not answer the remaining questions, but will simply sign the verdict." [17] The affidavit of Juror

17. The special verdict reads:

### SPECIAL VERDICT

We, the jury, answer the questions submitted to us in the Special Verdict as follows:

QUESTION NO. 1. Was there negligence on the part of the defendant, INTERNATIONAL HARVESTER COMPANY, which was a proximate cause of the accident?

ANSWER: Yes _9_ No _3_

QUESTION NO. 2. Was there negligence on the part of the defendant, DOKKEN IMPLEMENT CO., INC., which was a proximate cause of the accident?

ANSWER: Yes _0_ No _12_

If you answered either of the above questions "Yes," then please answer Question No. 3.

If you answered both of the above questions "No," you will not answer the remaining questions, but will simply sign the verdict.

QUESTION NO. 3. Was there negligence on the part of the plaintiff, LARRY W. WATSON, which was a proximate cause of the accident?

ANSWER: Yes _9_ No _0_

You are now to compare the negligence of the parties. If you answered "No" to Question No. 3, then insert a zero (0) in answer to Question No. 4(c). If you answered the previous question "Yes," then insert in the answer to Question No. 4, the percentage of negligence you find attributable to each party. Your percentage must total 100%.

QUESTION NO. 4. We find that the parties contributed to the cause of the accident in the following percentages:

| | | |
|---|---|---|
| (a) | The defendant, INTERNATIONAL HARVESTER CO. | 58.9% |
| (b) | The defendant, DOKKEN IMPLEMENT CO., INC. | 0 % |
| (c) | The plaintiff, LARRY W. WATSON | 41.1% |
| | TOTAL | 100% |

If the percentage of the negligence attributed to the plaintiff is equal to or greater than the percentage of negligence attributed to <u>each</u> defendant, then you will not answer any further questions, but will sign the verdict.

If the percentage of negligence attributed to the plaintiff is less than the percentage of negligence attributed to <u>any</u> defendant, then you will answer Questions No. 5 and 6.

Alan Don Hines stated, "Because jurors Dover, Nightingale and Pung voted 'No' to the first two questions [regarding International Harvester's and Dokken's negligence], it was thought that they should not participate any further in the actual decision-making of the jury." The affidavit of Diana L. Bull stated, "The jurors understood the Special Verdict to prohibit those jurors that answered both Questions No. 1 and 2 'No' from answering any further questions, and as a result, jurors Nightingale and Pung did not deliberate on or answer Questions 3, 4, 5 and 6; The jury foreman, Dover, did participate as foreman in the further deliberations, but didn't vote on Questions 3, 4, 5 and 6 ...." The affidavits of the other jurors indicate the same thing. As a result, the three jurors who initially did not think there was any negligence on the part of the defendants did not participate any further, and when the other jurors agreed to average the jurors' opinions as to negligence, only the nine jurors who thought there was some negligence on the part of the defendants participated in the averaging.

In civil trials, a party is entitled to a trial by a jury of twelve, not nine. Juries are regularly instructed, and this jury was instructed,[18] that each juror should consider

QUESTION NO. 5. What is the total amount of damages sustained by the plaintiff, LARRY W. WATSON, as a result of the accident?

 ANSWER: $666,222.22

QUESTION NO. 6. What is the total amount of damages sustained by the plaintiff, SHERRY WATSON, as a result of the accident?

 ANSWER: $ 67,222.22

_____

Foreperson

| /s/ Eric G. Schwam | /s/ Alan G. Hines |
|---|---|
| Juror | Juror |
| /s/ Christopher B. Trail | /s/ Cynthia Hochhalter |
| Juror | Juror |
| /s/ Janella M. Robertson | /s/ Laura Warnock |
| Juror | Juror |
| /s/ VeElla C. Whitcomb | /s/ Wendell Wendt |
| Juror | Juror |
| /s/ Diana Bull | |
| Juror | Juror |

_____

Juror

SPECIAL VERDICT

**18.** Instruction No. 29 read in part:

The attitude and conduct of jurors at the beginning of their deliberations are important. It is rarely productive for a juror, at the outset, to make an emphatic expression of his or her opinion on the case or to state how he or she intends to vote. When one does that at the beginning, his or her sense of pride may be aroused; and he or she may hesitate to change his or her position, even if shown that it is wrong. Remember that you are not partisans or advocates, but are judges. For you, as for me, there can be no triumph except in the ascertainment and declaration of the truth.

Consult with one another. Consider each other's views; and deliberate with the objective of reaching an agreement, if you can do so

the views of each of the other jurors in arriving at their decision in the case. While admittedly the ultimate verdict can be arrived at by nine of the twelve members of the jury, a party is still entitled to the deliberation of twelve qualified jurors. *See McNally v. Walkowski*, 85 Nev. 696, 462 P.2d 1016, 1018 (1969) ("A litigant is ... entitled to a jury composed of 12 impartial jurors; although a civil case may be decided by the vote of three-fourths of that number, a party has the right to have that decision, whether for or against him, based on the honest deliberations of 12 such individuals."); *Maddox v. Vieth*, 368 S.W.2d 725, 727 (Mo.1963) ("[L]itigant is entitled to the deliberations of 12 qualified men."); *Andrews v. County of Orange*, 130 Cal. App.3d 944, 182 Cal.Rptr. 176, 185 (1982) ("[P]laintiffs were entitled to the deliberations of 12 impartial jurors and prejudice must be presumed where they were denied that right.").

In this case it is clear that International Harvester did not receive the deliberation of twelve jurors. The affidavits are uncontradicted that after the first vote the three jurors who found no negligence on International Harvester's part were excluded from further participation. Had the percentages of all twelve jurors, including the three excluded jurors who found 0% negligence on the part of International Harvester, been averaged, the total percentage of negligence attributable to the plaintiff would have far exceeded the negligence attributable to the defendants, and the jury's verdict would have been for the defendants and not for the plaintiffs. Ironically, had those three excluded jurors even found 20% negligence on the part of International Harvester, then under this jury's interpretation of the instructions in the special verdict those three excluded jurors would have continued to participate further in the jury process, and their 20% negligence for International Harvester, when averaged with the rest of the jurors' negligence, would still have resulted in the plaintiffs' negligence exceeding that attributable to International Harvester.

Based on the uncontroverted affidavits, the defendants did not receive the deliberations of a twelve-person jury. I believe that constitutes an independent ground which would justify the trial court's decision to grant a new trial for juror misconduct under I.R.C.P. 59(a)(1), (2) and (7). *See Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247 (1983) (Courts may consider juror affidavits to clarify what the verdict was); *Seppi v. Betty*, 99 Idaho 186, 195, 579 P.2d 683, 692 (1978) ("[T]he trial court has broad discretion to order a new trial when it believes that the verdict, whether general or special, is a product of the jury's misunderstanding."). The jury in this case certainly misunderstood the directions on the special verdict when they excluded the three jurors from the deliberations merely because they were of the view that there was 0% negligence attributable to International Harvester. The trial court would be justified in granting a new trial in this case for that reason also.

without disturbing your individual judgment. Each of you must decide this case for yourself; but you should do so only after a discussion and consideration of the case with your fellow jurors.