990 F.2d 1256
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gilbert DAVIS; Susan Davis, Plaintiffs-Appellants,
v.
HEGAR 4 PRODUCTS, INC., Defendants-Appellees.
 No. 91-35788.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 19, 1992.*
Filed Oct. 9, 1992.
Withdrawn March 4, 1993.
Filed March 8, 1993.
 
 Before WRIGHT, BEEZER and LEAVY, Circuit Judges.
 
 
 1
 Upon consideration of the petition for rehearing filed on October 23, 1992, the court grants the petition. The memorandum disposition filed on October 9, 1992 is withdrawn.
 
 
 2
 MEMORANDUM**
 
 
 3
 Gilbert E. Davis was at the controls of his experimental airplane, the Davis Flying Wing, when its power transmission belt broke. The ensuing emergency landing rendered Davis a paraplegic. He brought a products liability suit against the belt's manufacturer and distributors. Ruling on summary judgment, the district court dismissed Davis' failure to warn claim and dismissed defendant T.B. Wood's Sons Company. After the district court entered a Rule 54(b) certification, Davis timely appealed. We affirm the dismissal of the failure to warn claim and reverse the dismissal of Wood's.
 
 
 4
 * Gilbert E. Davis designed, built and tested the Davis Flying Wing, a single-engine airplane inspired by the Northrup Flying Wing of World War II vintage. Although lacking a college degree and formal engineering skills, Davis had previously constructed experimental aircraft and innovative engines.
 
 
 5
 Acting on information given him by the manufacturer of what he believed to be a similar aircraft, Davis chose a "High Torque Drive" or "HTD" belt to drive the aircraft's propeller. Uniroyal, Inc. originally manufactured the brand of HTD belt which Davis used. Gates Rubber Company purchased Uniroyal's synchronous belt business and, for purposes of this suit, stands in its shoes. Wood's distributed the belt, along with other system components that it manufactured. Both Wood's and Gates knew that the multi-functional HTD belts drove airplane propellers.
 
 
 6
 The HTD belt that broke in-flight, as well as six identical belts tested in the Davis Flying Wing, bore an imprint of Wood's name, logo and trademark ("Shur-Grip"). Davis presents no evidence that he requested a "Wood's" or "Shur-Grip" belt. He does not dispute Wood's assertion that he requested generally "an HTD belt" and expressed no interest in its manufacturer.
 
 
 7
 Neither the belt nor its packaging included load-limit specifications. Gates and Wood's published these specifications, but Davis never sought them out. The published load-limits showed that the horsepower and the RPMs of the Kawasaki engine used by Davis exceeded the belt's capacity.
 
 
 8
 Although Davis expected the belt to last several hundred hours before needing replacement, it did not. After replacing four successive belts for excessive wear, the fifth HTD belt failed in mid-flight after 39 hours, forcing Davis to make an injury-free emergency landing. Earlier failures notwithstanding, Davis continued to use the HTD belt until the accident that rendered him a paraplegic.
 
 II
 
 9
 Davis argues that the district court erred in dismissing his failure to warn claim. He contends that the HTD belt was defective because it lacked a warning that it could fail at any time once overloaded.
 
 
 10
 Idaho law imposes a duty to warn "of danger[s] which arise during the known or foreseeable use of the product." Sliman v. Aluminum Co. of Am., 731 P.2d 1267, 1270 (Idaho 1986), cert. denied, 486 U.S. 1031 (1988) (quotation omitted). Until recently, Idaho limited this rule to those situations in which the danger is not obvious; if the danger is obvious, or known to the person injured, then the duty to warn does not attach. Mico Mobile Sales & Leasing v. Skyline Corp., 546 P.2d 54, 60 (Idaho 1975).
 
 
 11
 Mico's holding was narrowed by Watson v. Navistar Int'l Transp., 121 Idaho 643, 827 P.2d 656 (Idaho 1992). In Watson, the Idaho Supreme Court noted that the open and obvious danger doctrine no longer served as an absolute bar to recovery in product liability cases. Id. at 660, 827 P.2d at 673. The court limited the doctrine's applicability to those cases where uncontroverted facts showed the danger so open and obvious that the duty to warn became a question of law. Id. at 661, 827 P.2d at 674. In Watson, conflicting evidence in the record prevented the court from holding "as a matter of law that the danger imposed [by the defendant] was so plain, open and obvious that it precluded a duty to warn." Id.
 
 
 12
 In the case currently before the court, the danger was exceedingly plain, open and obvious. Despite his having to replace five previous HTD belts for excessive wear, and despite the previous in-flight failure which forced an emergency landing, Davis continued to use the same type of HTD belt without making even the minimum effort to establish its proper load limits.
 
 
 13
 Under these circumstances, the "limited" use of the open and obvious doctrine comes into play. Wood's had no duty to warn of such a plain, open and obvious danger. The uncontroverted facts allow only one reasonable conclusion and the district court was right to dismiss the failure to warn claim as a matter of law. See Fed.R.Civ.P. 56.
 
 III
 
 14
 Davis also contends that the district court erred in dismissing Wood's as a defendant. Although Wood's did not make the belt, it bears liability as a manufacturer if it "holds itself out as a manufacturer." Idaho Code § 6-1402(2) (1990). No Idaho court has yet interpreted this section of the Idaho Code. Wood's interprets section 6-1402(2) to require reliance by the purchaser on a mistaken belief that the distributor made the product. Davis disagrees, noting the statute is devoid of any reliance requirement.
 
 
 15
 Idaho's product liability statute provides:
 
 
 16
 "Manufacturer" includes a product seller ... not otherwise a manufacturer that holds itself out as a manufacturer.
 
 
 17
 Id. On its face, the statute refers only to the actions of a product seller, not those of the purchaser. Omitted is any need for the purchaser to prove actual reliance on the seller's representations.
 
 
 18
 Wood's argues we should nevertheless find an implied reliance requirement. It relies on comments to the Restatement (Second) of Torts and a treatise.[1] A recent Idaho Supreme Court case suggests, however, that when the plain language of the statute is clear, the inquiry should cease.
 
 
 19
 In Peterson v. Idaho First Nat'l Bank, 117 Idaho 724, 791 P.2d 1303 (Idaho 1990), the court considered the question whether commercial sellers of used products were subject to strict liability. After determining that the plain language of section 6-1402 excluded such merchants, the court cautioned against relying on the legislative history of the Uniform Product Liability Act (on which Idaho modeled its statute):
 
 
 20
 The language which the Idaho legislature considered and adopted was the language contained in the statute, I.C. § 6-1402(1)(b), not the language in the comment in the Federal Register. The language in I.C. § 6-1402(1)(b) is clear and unambiguous....
 
 
 21
 Id. at 724, 791 P.2d at 1307; see also id. at n. 1 ("the comments to the UPLA are not dispositive in interpreting [Idaho's statute"]. Earlier in the same opinion, the court also noted that it reviews each comment on a case by case basis, and that when Idaho adopts a section of the Restatement it does not necessarily include all the comments associated with that section. Id. at 724, 791 P.2d at 1305.
 
 
 22
 In light of the plain language of section 6-1402 and Peterson, we hold that the district court erred in its interpretation of Idaho law and that section 6-1402 requires no showing of purchaser reliance. The fact that Davis did not rely on information from Wood's, or on the Wood's name or trademark, is irrelevant to the determination of manufacturer liability under section 6-1402. It was error to dismiss Wood's on those grounds.
 
 IV
 
 23
 The district court's summary judgment dismissing the failure to warn claim is AFFIRMED. The dismissal of Wood's is REVERSED.
 
 
 24
 Davis shall bear Gates' costs on appeal and otherwise the parties shall bear their own costs.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Wood's cites Restatement (Second) of Torts § 400 (1965) and American Law of Products Liability 3d § 6:5 (T. Travers ed., 1987)