(October 9, 1915.)

## W. A. BEAKLEY, Appellant, v. OPTIMIST PRINTING COMPANY, LIMITED, a Corporation, and KARL P. BROWN, Respondents.

[152 Pac. 212.]

MISCONDUCT OF JURY—CHANCE VERDICT—PROVED BY AFFIDAVIT OF ONE OR MORE OF THE JURORS.

1. As jurors are bound to return verdicts according to the evidence and the instructions of the court, the differences of litigants, when submitted to a jury, should be carefully and conscientiously considered; and should not be determined by any gambling method. The tossing of a coin to effect an agreement during the delibera-

tions of the jury, coupled with the compact to abide by the result—though it may not be done with an improper purpose—is nevertheless contrary to law, and a verdict so reached is void.

2. When any one or more of the jurors have been induced to assent to a general or special verdict by a resort to the determination of chance, such misconduct may be proven by the affidavit of any one or more of the jurors; and when so proven, it is the duty of the court to set aside such verdict and grant a new trial.

[As to affidavits of jurors as evidence that verdict returned or entered differed from that actually found, see note in **Ann. Cas. 1912A, 1205.**]

APPEAL from the District Court of the Sixth Judicial District for Bingham County. Hon. J. M. Stevens, Judge.

Action to recover damages for libel. Judgment for defendants. *Reversed.*

A. S. Dickinson, for Appellant.

Sec. 4439, Rev. Codes, provides, among other things, that when any one or more of the jurors rendering a verdict has been induced to consent to such verdict by a resort to the determination of chance, such consent vitiates the verdict, and that such fact may be proven by the affidavit of any one of the jurors. (*King v. Elton,* 2 Cal. App. 145, 83 Pac. 261; *Donner v. Palmer,* 23 Cal. 40; *Levy v. Brannan,* 39 Cal. 485.)

No appearance for Respondents.

BUDGE, J.—The plaintiff below and appellant here commenced an action in the district court of the sixth judicial district in and for Bingham county, by filing a complaint against the Optimist Printing Company, a corporation engaged in publishing a newspaper at Blackfoot, known as the "Blackfoot Optimist," and Karl P. Brown, its editor and manager, defendants below and respondents here. The action was one to recover damages for libel.

To the complaint of the plaintiff the defendants filed a demurrer which was overruled. Thereafter the defendants

filed their answer, and on June 26, 1913, the cause came on for trial before the court and jury.

On June 28, 1913, the jury returned its verdict in favor of the defendants. Judgment was thereupon duly entered in favor of the defendants, and against the plaintiff for costs in the sum of $51.50.

Thereafter notice of motion and motion for a new trial were duly filed and presented to the court and by the court, on January 5, 1914, denied. This is an appeal from the judgment and from the order of the court denying plaintiff's motion for new trial.

Appellant assigns five specifications of error:

First, there is no evidence in the record to sustain a judgment in favor of the defendants, or either of them.

Second, misconduct of the jury in arriving at their verdict by chance.

Third, the court erred in entering and giving judgment upon the verdict for the defendants for the reason that said verdict is unsupported by any evidence in the record.

Fourth, the court erred in permitting the defendant Karl P. Brown to testify over plaintiff's objection that by the publication of the article of February 27, 1913, he did not intend to injure the plaintiff.

Fifth, the court erred in refusing to permit witness L. M. Capps to testify as to whether or not the plaintiff and appellant herein rendered the opinion mentioned in the article dated February 27, 1913, in his official capacity as city attorney to the city council or whether he simply expressed his views as a citizen.

We will consider only the second assignment of error, which we think is decisive of this case.

Touching the misconduct of the jury, there is in the record an affidavit of each of the jurors, sworn to try this cause, as to how the verdict was reached. The affidavits of jurors Glassburn and Montague, omitting the title of the court and the cause, read as follows:

"L. D. Glassburn [and J. A. Montague], being first duly sworn, says: That he was one of the jurors that tried the

above-mentioned case in the above-mentioned court and that at such deliberations by the jurors after deliberating till about midnight or perhaps later, stood evenly divided, between this plaintiff and defendant at which time it was agreed by the parties that were in favor of these defendants and by four that were for this plaintiff, that they would toss up a dollar for heads or tails and would decide the verdict in that method. Accordingly those in favor of defendant tossed up a dollar, as well as one that favored the plaintiff and the foreman was to toss the dollar for the third throw and in this method the defendants won the majority of the throws and according to their previous agreement four of the jurors that were for this plaintiff voted defendant, who had just won the majority in the tossing of the dollar, and none of these said jurors that changed their votes ever stated that they had changed their minds, but just voted for defendants because these defendants had won in the 'toss up' of the dollar by chance.''

Juror Wheeler, in his affidavit, states that he reached his verdict after a careful consideration of the evidence, but that there was some talk of a compromise or chance, and that there was a dollar thrown up to see which side turned and one ballot taken thereafter which stood ten to two.

Jurors Stevens, Taylor and Dalton, in their affidavits, stated that, though they reached their verdicts after a careful consideration of the evidence, there was some talk about a compromise or chance.

The remaining six jurors make affidavit to the effect that their verdict was reached after a careful consideration of the evidence and instructions of the court; but make no denial of or reference to the facts set out in the Glassburn and Montague affidavits.

Thus it will be seen that two jurors swear positively that an agreement was reached to abide by the result of the pitching of the dollar, and when the dollar was thrown the verdict was rendered accordingly. A third juror states that there was talk of reaching the verdict by chance and that immediately after the dollar was thrown and without any further

consultation a vote was taken which resulted in the ballot standing ten to two, whereas, it appears that just prior to that time the jury had been equally divided for the plaintiff and the defendants. The fourth, fifth and sixth jurors state that there was talk of reaching the verdict by chance. While the remainder of the jurors state in their affidavits that each of them reached his verdict after a careful consideration of the evidence and the instructions of the court, not one of them denies that the agreement was made as set forth in the affidavits of Montague and Glassburn, to the effect that if the defendants won in the toss of the dollar the four jurors who had theretofore voted for the plaintiff would vote for the defendants, and if the plaintiff won, the six who had theretofore voted for the defendants would vote for the plaintiff, and, as ''extreme credulity is not one of the cardinal virtues of the judicial mind,'' we cannot but believe that if this agreement had not been reached, each and all of these jurors would have so stated in their affidavits.

This court has the same right to pass upon the weight to be given statements contained in affidavits of jurors as the trial court. The question of a conflict in the affidavits, therefore, can be determined here independent of the conclusions reached by the trial court.

The record bears us out, when we say that the four jurors who had theretofore voted for the plaintiff, after having lost as a result of the toss of the dollar, immediately voted for the defendants. Consequently, we feel free to assume that had the six jurors who agreed with the four to abide by the result of the gamble lost in the toss of the dollar, they would have changed their votes, and voted for the plaintiff.

Thompson on Trials, sec. 2602, p. 1883, in discussing chance verdicts, announces the rule of law to be that ''the *vitiating fact* is the agreement in advance to abide by the result.''

In the case of *Mitchell v. Ehle,* 10 Wend. (N. Y.) 595, the jurors, after an ineffectual attempt to agree on a verdict, left it to lot whether the verdict should be for the plaintiffs or defendants, by placing ballots in a hat, some marked prize, and others being blank, to be drawn out by the jurors; and if

more prizes than blanks were thus drawn out of the hat, it was agreed the verdict should be for the plaintiffs, otherwise for the defendants. The drawing resulted in favor of the defendants, and the jury were about to report a verdict in favor of the defendants, when the constable who attended them put before them a paper, intimating that their proceeding was unlawful, and might subject them to punishment; whereupon the jury agreed that the balloting should go for nothing, but determined that the verdict should notwithstanding be for the defendants, and reported accordingly. The plaintiffs moved to set aside the verdict, and the court said: "The verdict was manifestly the result of the lottery, and not of the deliberations of the jury. It must be set aside."

In the case of *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545, this court seems to have gone so far as to hold that where the conduct of the jury in reaching a verdict is of doubtful propriety, the verdict should be set aside.

There are decisions that make a distinction between what is known as a quotient verdict and a gambling verdict. The objection to the former is frequently overcome where it appears that the jurors, for the purpose of arriving at an amount upon which to base a discussion and consideration of the merits of the case, set down sums which each considers proper, the respective amounts being added together and divided by the number of jurors before whom the case is being tried, and the quotient is subsequently agreed upon or increased or diminished, and finally becomes the verdict of the jury; while in the latter there is no discussion or consideration of the merits by the jury, and the litigants must abide by the result of the gamble. (*Florence & C. C. R. Co. v. Kerr* (Colo.), 151 Pac. 439.)

In the case at bar there was but one vote taken after the dollars were thrown, and that was for the purpose of determining whether the four jurors who had previously agreed to abide by the result of the gamble would vote with the winning side; which they did.

Litigants are not presumed to take chances in submitting their differences to a jury by the tossing of a dollar or by

any other gambling method. And while such conduct might be innocent on the part of the jurors, it is nevertheless contrary to law and should not be encouraged. Parties to a suit have a right to have their differences carefully and conscientiously considered by the jury; and jurors are bound to return verdicts according to the evidence and the instructions of the court.

We are firmly of the opinion that the verdict reached by the jury was a chance verdict and not based upon the evidence and the instructions of the court.

Sec. 4439, Rev. Codes, subdiv. 2, provides: "Misconduct of the jury; and when any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."

This court has heretofore construed the provision of the above statute and, under facts similar to those contained in the affidavits quoted in this opinion, held that when any one or more of the jurors have been induced to assent to any general or special verdict, or to any finding on any question submitted to them by the court by a resort to the determination of chance, such misconduct may be proven by the affidavit of any one or more of the jurors; and when so proven, such verdict should be set aside and a new trial granted. (*Flood v. McClure*, 3 Ida. 587, 32 Pac. 254; *Griffiths v. Montandon*, 4 Ida. 377, 39 Pac. 548; *Giffen v. City of Lewiston*, 6 Ida. 231, 55 Pac. 545. See, also, *Mannix v. Malony*, 7 Iowa, 81; *Merseve v. Shine*, 37 Iowa, 253, and *Mitchell v. Ehle, supra*.)

The judgment of the trial court is reversed and the cause remanded, with instructions to vacate the judgment and grant appellant's motion for new trial. Costs are awarded to appellant.

Morgan, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates.

It appears from the record that the jury had stood six for the plaintiff and six for the defendants, and then, according to the affidavits of two of the jurors who were for the plaintiff, the four other jurors who had stood with them for the plaintiff and the six jurors who were for the defendants agreed ''that they would toss up a dollar for heads or tails and would decide the verdict in that method. Accordingly those in favor of the defendant tossed up a dollar, as well as one that favored the plaintiff, and the foreman was to toss the dollar for the third throw, and in this method the defendants won the majority of the throws, and according to their previous agreement four of the jurors that were for this plaintiff voted defendants, who had just won the majority in the tossing of the dollar, and none of these said jurors that changed their votes ever stated that they had changed their minds but just voted for defendants because these defendants had won in the 'toss up' of the dollar by chance.''

In the counter-affidavits of the other ten jurors it is stated that each of them reached and rendered verdict therein after a careful and due deliberation and consideration of the evidence adduced and introduced during the process of the trial and the instructions of the court and upon that alone; that they did not arrive at or render such verdict by chance.

It is stated in two or more of the counter-affidavits that during the deliberations of the jury there was ''some talk about a compromise or by chance,'' but that affiant verily believed that no juror paid any attention to that; that after the dollar was thrown there was one ballot taken and the verdict then stood ten to two.

Since ten of the jurors made affidavits that they did not render their verdict on account of the pitching of the dollar but that they did render it on the evidence and instructions of the court, the trial court refused to grant a new trial.

As I view it, there is more than a ''substantial conflict'' in said affidavits, and the action of the trial court ought to

be sustained in not granting a new trial and the rule of "substantial conflict" applied.

The majority hold in this case that it has been proven that such verdict was arrived at by a resort to chance and I cannot concur in that conclusion. When ten men swear that they did not arrive at their verdict by chance, I think it ought to be taken against the evidence of two men who swear that they did arrive at such verdict by reason of chance. In other words, I do not think it is proven in this case that there was a resort to chance in arriving at said verdict.

Upon an examination of the evidence, I am fully satisfied that the verdict and judgment are amply supported by it. No verdict ought to be sustained that depended upon the tossing up of a coin; but the affidavits in this case are ten to two that the verdict was not arrived at by pitching a dollar. On a motion for a new trial on the ground that the verdict was determined by resort to chance, the burden of proof is on the movant to show such fact. (*Archibald v. Kolitz,* 26 Utah, 226, 72 Pac. 935.)

As bearing on the question of chance verdicts, see *Lee v. Clute,* 10 Nev. 149; *Greeley Irr. Co. v. Von Trotha,* 48 Colo. 12, 108 Pac. 985; *McDonnell v. Pescadero & S. M. Stage Co.,* 120 Cal. 476, 52 Pac. 725; *Wiles v. Northern Pac. Ry. Co.,* 66 Wash. 337, 119 Pac. 810; *Empson Packing Co. v. Vaughn,* 27 Colo. 66, 59 Pac. 749. It is true that these cases go more to a quotient verdict than to a verdict that is claimed to have been arrived at either for plaintiff or defendant upon the pitching of a coin.

But some of them also go to the weight of the evidence required when a verdict is sought to be impeached. Under our constitution and law nine jurors may render a verdict, and if the three who would not join in such a verdict could by their affidavits have the verdict set aside against the affidavits of the nine who agreed in the case, any verdict might be set aside in such a manner, even though the nine made affidavit, as was done by ten in this case, that the verdict was not determined by resort to chance but that it was rendered upon a due and careful consideration of the evidence adduced

on the trial and the instructions given by the court, and upon that alone.

In the case at bar, ten of the jurors, as before stated, made affidavit that they did not arrive at their verdict by reason of the pitching of a dollar.

The judgment ought to be sustained.