870 P.2d 1308

**Larry W. WATSON and Sherry Watson, husband and wife, Plaintiffs–Respondents,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP., formerly known as International Harvester Company, a Delaware Corporation, Defendant–Appellant,**

**and**

**Dokken Implement Company, Inc., an Idaho Corporation, Defendant–Respondent.**

No. 20066.

Supreme Court of Idaho, Lewiston, May 1993 Term.

Feb. 10, 1994.

Rehearing Denied April 6, 1994.

Clements, Brown & McNichols, Lewiston, for defendant-appellant. Michael E. McNichols, argued.

Aherin & Rice, P.A., Lewiston, for plaintiffs-respondents Watson. Darrell W. Aherin, argued.

Ware, O'Connell & Creason, Lewiston, for defendant-respondent Dokken Implement Co., Inc., who did not appear.

McDEVITT, Chief Justice.

## BACKGROUND

Respondent Larry Watson ("Watson") was injured when his foot was caught in an auger in the grain tank of appellant Navistar's combine. Watson was attempting to clear clogged grain from the tank by stepping into the tank while the engine was running and by jostling the grain loose with his foot. His

foot slipped into an auger and was severely mangled. Ultimately, his leg had to be amputated below the knee. The operating manual for the combine incorporates warnings concerning the operation of the combine, including a warning against entering the combine with the engine running. Watson had read the manual and was aware of the warnings. Watson sued Navistar, alleging negligent design and insufficient warning. Navistar denied any negligence and asserted the affirmative defense of contributory negligence. After almost twelve hours of deliberation, the jury returned a verdict in favor of Watson, finding that Navistar was more negligent than Watson, 58.9% to 41.1%, and assessing Watson's damages at $666,222.22. When polled, each juror affirmed that the verdict was theirs. The verdict was reduced to reflect Watson's negligence, and, on February 6, 1986, judgment was entered for Watson in the amount of $431,998.78.

Navistar moved for a new trial based on affidavits of five of the jurors and one of the alternate jurors stating that the jurors all agreed in advance to average their opinions of liability and damages and to be bound by the results. The trial court granted the motion on November 24, 1986, finding that an impermissible quotient verdict had been reached according to the standard set forth in *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974). Acknowledging that the juror affidavits witnessing the quotient verdict were uncontradicted, the trial court stated that "the evidence is clear that the jury reached their verdict by chance as opposed to deliberation."

Watson appealed the ruling, and the case was heard by this Court on October 4, 1990. This Court vacated the order granting a new trial, announcing the standards to be applied to quotient verdicts, and remanding the case for further proceedings consistent with the opinion. Specifically, the trial court was directed to consider whether Navistar had made a clear showing that each juror "severally" agreed in advance to be bound by a quotient verdict. *Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643, 658, 827 P.2d 656, 671 (1992) (*Watson I*). After a hearing on the matter, the trial court found that Navistar had failed in its burden and denied the motion for a new trial, stating that "this court is assured that the jury did in fact participate in solemn deliberation and that the verdict finally agreed upon was not irrationally skewed by a minority of inveterate jurors." Navistar now appeals the trial court's denial of its motion for a new trial.

Navistar frames the following issues on appeal:

I. Did the trial court abuse its discretion in denying appellant's motion for a new trial.

II. Did the interest on the award run from the date of the original judgment.

## STANDARD OF REVIEW

The determination of whether the conduct of the jury in returning a verdict based on averaging has deprived a party of a fair trial and whether to grant or deny a new trial is left to the sound discretion of the trial court. *Watson I*, 121 Idaho at 655, 827 P.2d at 668; *see also Lombard v. Cory*, 95 Idaho 868, 870, 522 P.2d 581, 583 (1974). In determining whether the trial court has abused its discretion, this Court conducts a multi-tiered inquiry:

(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Watson I*, 121 Idaho at 658, 827 P.2d at 671 (citing *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1991)); *State v. Hedger*, 115 Idaho 598, 768 P.2d 1331 (1989). Where the evidence to be considered is based entirely upon a written record, as in this case where juror affidavits constitute the record, this Court exercises the privilege of passing upon the weight to

be given statements contained in affidavits of jurors as did the trial court. *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 71, 152 P. 212, 214 (1915).

## ANALYSIS

### I.

### THE QUOTIENT VERDICT

■ This Court in *Lombard v. Cory*, 95 Idaho 868, 522 P.2d 581 (1974), held that:

> This Court has long adhered to the rule that where each juror submits the amount of damages he or she thinks is proper and these are averaged, it is not a quotient verdict so long as the jurors do not agree in advance to be bound by the average reached.

*Lombard*, 95 Idaho at 870, 522 P.2d at 583. The *Lombard* court quoted *Cochran v. Gritman*, 34 Idaho 654, 672, 203 P. 289, 295 (1921), which states that:

> A verdict is not subject to be challenged on the ground that it was a chance verdict because the jurors during the course of their deliberation, in order to compose their differences of opinion as to the amount that should be allowed, undertake to average their judgment, unless it clearly appears that before doing so they each severally agree to be bound by the result of such chance methods after the result has been reached.

*Lombard*, 95 Idaho at 870–71, 522 P.2d at 583–84. This Court adhered to that same position in *Watson I*. In the original appeal in this case, this Court reemphasized the standard to be applied by the trial court to the special verdict, citing *Lombard, Cochran,*

and *Beakley*. This Court directed the trial court to determine whether Navistar made a clear showing not only that an average was employed by the jury, but also that each juror severally agreed to be bound by the average, resulting in a quotient verdict. *Lombard* expressly held, and *Watson I* implicitly recognized, that a quotient verdict is defined by the presence of both elements, and that a quotient verdict *per se* results in an unfair trial. *See Lombard*, 95 Idaho at 870, 522 P.2d at 583. This Court is cognizant of the fact that the severalty requirement mitigates the effect disgruntled jurors might have when attempting to assist the losing party to upset the verdict, and that the trial court must focus on this precise legal standard. *Watson I*, 121 Idaho at 658, 827 P.2d at 671. The term "severally agreed to be bound" simply means that *each* juror agreed to be bound in advance.

■ The key issue in this case, left unattended by *Watson I*, causing both the parties and the trial court to remain in doubt, is what constitutes a "clear showing" that a quotient verdict was reached. In *Beakley*, this Court quoted and relied on the existing statute which stated, "when any one or more of the jurors have been induced to assent to any ... verdict ... by a resort to the determination of chance, such misconduct may be proven by the affidavit of any one of the jurors." *Beakley v. Optimist Printing Co.*, 28 Idaho 67, 73, 152 P. 212, 214 (1915) (quoting Sec. 4439 Rev.Codes). From this premise it is clear that not every juror need attest to his or her independent agreement to be bound by the averaged verdict. In this case, three jurors attested that all nine deliberating jurors agreed in advance to average their verdicts and be bound by the result.[1] Moreover, evidence gleaned from these and other

---

1.  1.  Affidavit of juror Diana Bull:
    Juror Bull affied that "because of the wide varieties of opinions, and the firmness of each of the jurors in their opinions, the jurors realized that we would never be able to reach a verdict unless each juror's opinion was averaged with the others. As a result, the nine jurors then participating agreed to average their opinions and then be bound by the average."

2.  Affidavit of juror Cynthia A. Hochhalter:
    Juror Hochhalter's affidavit states that "because of the wide difference in the opinions of the jurors, and the great strength with which those opinions were held, we discussed and understood that we would never be able to reach a verdict without averaging the opinions. We agreed to average the nine jurors' opinions and be bound by the average of the votes."

3.  Affidavit of juror Alan Don Hines:

affidavits shows that at least two participating jurors were inveterate, in that they adjusted their verdicts up or down on the second vote in order to affect the average.

The determinative holding in *Watson I* stated:

> Therefore, the case is remanded for the district court's determination of whether the verdict was based on adequate deliberations and for consideration of the first set of affidavits in light of the well established standard that in order to find jury misconduct it must be clearly shown that each juror joining in the verdict severally agreed in advance to be bound by the averaged figures. Accordingly, we vacate the order of the district court granting a new trial on the ground of jury misconduct and remand for further consideration.

*Watson I,* 121 Idaho at 658, 827 P.2d at 671.

With the affidavits of jurors Bull, Hochhalter, and Hines, stating that all of the jurors agreed to be bound by an averaging of their respective opinions, the trial court did not act within the outer boundaries of its discretion in holding that the jury's verdict was reached as a result of "solemn deliberation."

We now hold that there is clear evidence that the jury submitted a quotient verdict and that the trial court abused its discretion in finding that Navistar did not sustain its burden of showing that a quotient verdict had been reached. The judgment is reversed and the case remanded for a new trial. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991).

## THE INTEREST RATE

Appellant also argues that interest on the judgment should run only from the date of the order denying a new trial, and that it is a deprivation of their Fourteenth Amendment right to equal protection and due process to apply the pre–1987 statutory interest rate of 18%. Because we have reversed the judgment and remanded the case for a new trial, this issue need not be addressed at this time.

Costs on appeal to appellant Navistar.

BISTLINE, JOHNSON and TROUT, JJ., concur.

SILAK, Justice, dissenting.

I respectfully dissent. The standard of review employed by the majority gives no deference to the determinations made by the district court on remand, contrary to the clear import of the Court's earlier decision in *Watson I.* In my view the district court on remand did not abuse its discretion in concluding that Navistar had failed to make a clear showing that each juror severally agreed to be bound by the average of either liability or damages.

*Watson I* concluded that the district court had abused its discretion by failing to apply the proper legal standard for determining whether a verdict is an impermissible quotient verdict. The Court noted that the district court improperly limited its focus to whether the jurors had "agreed to be bound," rather than considering the entire legal standard of whether the verdict was based upon adequate deliberations and whether *each juror severally* agreed in advance to be bound by an average. Having articulated the proper legal standard, the Court remanded the case to have the district court determine whether the verdict was valid in light of that standard. The Court stated:

> [W]e hold that the determination of whether the conduct of the jury in returning a verdict based on averaging has deprived a party of a fair trial, and whether to grant or deny a new trial, is *left to the sound discretion of the trial court....* [O]nce the trial court in the instant appeal applies the standards set forth herein to the first

This juror's affidavit avers that "during the deliberations of the other nine jurors, it was the consensus that we could not all agree on one figure, so we all agreed to submit a figure and whichever way the average came out, that would be the jury's decision."

set of affidavits, and after considering all of the circumstances of the jury's deliberative process, it will be in a position to determine whether an impermissible verdict was reached and whether the conduct of the jury in reaching its verdict denied any of the parties a fair trial.

*Watson I,* 121 Idaho at 655, 827 P.2d at 668.

On remand, the district court reevaluated the juror affidavits in light of the standards set forth in *Watson I,* and determined that the verdict was based upon adequate deliberations, and that the juror affidavits failed to clearly show the jurors severally agreed in advance to be bound by their average.

Now on appeal for the second time, the majority has decided to apply a wholly different standard of review, stating:

[T]his Court exercises the privilege of passing upon the weight to be given statements contained in affidavits of jurors as did the trial court.

Ante at 351, 870 P.2d at 1310. Had the Court applied this standard in *Watson I,* there would have been no need to remand the case to the district court. The *Watson I* Court simply would have weighed the meaning and credibility of the juror affidavits in light of the appropriate standard, and decided for itself whether the affidavits constitute a clear showing that the jury rendered a quotient verdict, just as the majority has done today.

The district court did not abuse its discretion in determining that Navistar failed to clearly show the verdict was based on inadequate deliberation or that the jurors severally agreed in advance to be bound by an average. *Watson I* urged the district court, on remand, to reexamine the first set of affidavits in light of the purpose of I.R.E. 606(b), stating:

In addition to the standards articulated in our prior cases, the purposes underlying the chance verdict rule should also be considered by a trial court. An explicit focus on the purposes of the rule follows from the current formulation of the rule in I.R.E. 606(b) and prevents *undue empha-*

*sis on conclusionary language* scripted from our cases in the juror affidavits. A focus on the purposes of the rule allows the trial court to better assess whether a verdict was truly the result of chance or the result of meaningful deliberation.

*Watson I,* 121 Idaho at 656, 827 P.2d at 669. (Emphasis added.) *Watson I* also noted that the focus of I.R.E. 606(b) was to address the policy concerns of finality of verdicts and that jury deliberations remain relatively free of post-trial inquiry. The Rule also attempts "to avoid the practical concern that an affidavit by a juror to impeach his or her own verdict is potentially unreliable." *Id.* at 657, 827 P.2d at 670.

By avoiding potentially misleading affidavits of jurors attempting to impeach their verdict, Rule 606(b) helps focus on the purpose of our chance verdict rule. The purpose of the rule is to assure that a jury participate in "solemn deliberation" and avoid a verdict that was irrationally skewed by a minority of "inveterate jurors."

*Watson I,* 121 Idaho at 658, 827 P.2d at 671 (citations omitted).

The *Watson I* Court thus cautioned the district court on remand to keep in mind the overall purpose of Rule 606(b), and not to be unduly swayed by language in affidavits that was "scripted," "conclusionary," "potentially unreliable" or "misleading." In his opinion on remand, the district judge wrote that he was well aware of *Watson I's* admonitions. Other recent decisions of the Court, in the context of summary judgment proceedings, have cautioned that conclusory statements do not provide the kind of specific, admissible facts that will support or prevent the entry of summary judgment. *See, e.g., Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 784, 839 P.2d 1192, 1198 (1992).

Turning to the analysis of the affidavits themselves, the district judge considered on remand five juror affidavits from foreman Rocky Dover and jurors Diana L. Bull, Cynthia A. Hochhalter, Alan Don Hines, and Laura Warnock. Alternate juror Barbara J.

Hopkins also gave an affidavit. Four subjects were addressed by one or more juror affidavits: (1) the taking of an average as to the percentage negligence of the plaintiff and defendant; (2) whether the jurors agreed to be bound by the average of negligence percentage; (3) the taking of an average as to the amount of money damages; and (4) whether the jurors agreed to be bound by the average of the money damage amount.

As to the subjects numbered (1) and (2) above, the affidavits of Bull and foreman Dover show that the first average liability figure was rejected by the nine voting jurors, and that a second average was taken as to which all jurors agreed. No juror affidavit states that each juror severally agreed in advance to be bound by the second liability average.[2] I therefore find it well within the bounds of its discretion for the district court to have concluded that Navistar failed to clearly show an impermissible quotient verdict with respect to percentage of negligence. This conclusion is bolstered by the statement in *Watson I* that "our cases have noted that subsequent discussions or increases in the amount awarded after an average has been taken demonstrates that a prior agreement to be bound either did not exist or that it was not followed by the jurors." 121 Idaho at 655, 827 P.2d at 668 [citations omitted]. The fact that here the jurors undertook to calculate the negligence percentage a second time renders illusory the so-called agreement to be bound by the average.

As to subjects numbered (3) and (4), relating to damages, the district court could have

properly concluded that the jury's ability to discard its "agreement" as to negligence percentage also rendered a nullity the purported agreement to be bound by their damages average. Additionally, the district court could have correctly viewed the statements in the affidavits as deficient on these points.

Nowhere in the affidavits does any juror aver that "each juror severally" agreed in advance to be bound. In Hines' affidavit, relied on by the majority, only the conclusory terms "it was the consensus" and "so we all agreed" are used. This affidavit gives none of the supporting detail that would, in my view, establish "clearly," as required by *Watson I* and established precedent, that there was an agreement by each juror severally. For example, nowhere does Hines aver that each juror stated he or she would be bound by the average of liability, or that each juror raised his hand or otherwise affirmatively assented in advance to be bound. Without such supporting facts, Hines' subjective opinion that "it was the consensus" or that "we all agreed" is conclusory. The lack of any specific factual recitation (as *Hecla* would require in the summary judgment context) could properly have led the district court to reject Hines' affidavit as not clearly establishing an agreement by each juror severally.

The affidavits of Bull and Hochhalter do not support the conclusion that each juror severally agreed to be bound by the average damage figure. When read in context, the statements quoted in the majority opinion, *ante* at 353, 870 P.2d at 1312, do not refer to the issue of damages, only to negligence.[3]

---

2. The rule which pertains to verdicts determined by averaging was correctly stated in *Watson I:*
   [E]ven if affidavits from every juror are not presented with the motion for a new trial, the affidavits filed with the court must establish that all jurors agreeing to the verdict were impermissibly bound. Reflecting our reluctance to expand a potentially broad exception, the requirement that juror affidavits make a clear showing that each juror severally agree to be bound has been repeated in our recent cases. *Lombard v. Cory,* 95 Idaho 868, 522 P.2d 581 (1974); *Clark v. Foster,* 87 Idaho 134, 391 P.2d 853 (1964).
   *Watson I,* 121 Idaho at 655, 827 P.2d at 668. *See also Butland v. City of Caldwell,* 51 Idaho 483, 6

P.2d 493 (1931); *Giffen v. City of Lewiston,* 6 Idaho 231, 55 P. 545 (1898).

3. The following passage is from juror Diana Bull's affidavit:

   In voting on the negligence of the plaintiff Larry Watson and defendant International Harvester Company, the opinions of the jurors, as verbally expressed, varied greatly. Some jurors thought that the plaintiff Watson was responsible for most of the negligence, while other jurors thought and said that International Harvester Company was responsible for a majority of the negligence. Each juror seemed to be very firm in his or her individual opinion;

Bull does not address the issue of damages at all in her affidavit. Hochhalter states only that "I felt I was bound by my previous agreement to accept the average of the percentages of negligence and the average of money damages." Hochhalter does not state that "each juror severally" agreed to be bound by an average of money damages, only that she herself felt so bound.

Foreman Dover's affidavit, not mentioned in the majority opinion, also lends support to the district court's conclusion the affidavits do not clearly show that each juror severally agreed to be bound by an average of negligence percentage and an average of money damages. Dover did not vote with the nine jurors because he was one of three who decided that Navistar was not negligent. Nevertheless, his affidavit demonstrates that he actively participated in calculating the averages. Although the language of his affidavit in some respects is patterned after those of Bull and Hochhalter, the affidavit notably lacks any statement whatsoever that each juror severally agreed in advance to be bound by the average of either negligence percentage or money damages. Dover says nothing about any agreement. Moreover, Dover notes in his affidavit that after the "preliminary vote on negligence, after discussing the instructions and discussing the

different opinions, another vote of negligence was taken with the same ending result." Dover's affidavit directly contradicts, at least with respect to the vote on percentage of negligence, any semblance of blind adherence to a preexisting agreement to be bound, stating as it does that there was discussion, i.e., deliberation on the instructions and the different opinions. The Dover affidavit supports the district court's conclusion as to both adequate deliberations and no prior agreement by each juror severally to be bound by an average, at least as to percentage of negligence.

As to the "inveterate juror" problem noted by the majority, *ante* at 353, 870 P.2d at 1312, the majority's analysis of the issue is flawed, in that it uses the inveterate juror as a defining reason to find that averaging, which is proper where no prior agreement to be bound exists, is here improper. The affidavits can be reasonably and permissibly read as not clearly showing a prior agreement by each juror severally to be bound. Therefore, because each juror retained his or her ability to reject the average, the problem of the inveterate juror is not present here, because each juror has not been shown to be an automatic adherent to an average.

*Watson I* explained at length that the district court on remand was to keep in mind

Because of the wide varieties of opinions, and the firmness of each of the jurors in their opinions, the jurors realized that we would never be able to reach a verdict unless each juror's opinion was averaged with the others. As a result, the nine jurors then participating agreed to average their opinions and to be bound by the average;

The jurors each submitted a written ballot to the foreman on which that juror had written his vote on the percentage of negligence for the plaintiff Larry Watson and for the defendant International Harvester. The foreman took the ballots and added the percentages and divided by nine. The foreman then reported the average which resulted;

Because there was some dissatisfaction with our first vote on the percentages of negligence, we decided to vote again, and that this vote would be our decision;

(Bull Aff. ¶¶ 8–11.)

The following passage is from juror Cynthia Hochhalter's affidavit:

When the jurors began deliberating on the percentages of negligence attributable to the plaintiff Larry Watson and defendant Interna-

tional Harvester Company, it was clear that the opinions of some jurors as to the negligence of the parties were vastly different from the opinions of other jurors. The jurors held their opinions very strongly.

Because of the wide difference in the opinions of the jurors, and the great strength with which those opinions were held, we discussed and understood that we would never be able to reach a verdict without averaging the opinions. We agreed to average the nine jurors' opinions and be bound by the average of the votes. We then averaged the nine remaining jurors' opinions of the negligence of the parties. Each of the nine jurors submitted a written percentage of negligence for the plaintiff and a written percentage of negligence for defendant International Harvester Company. The foreman added the percentages of the plaintiff together and divided by nine. The foreman then added the percentages of negligence· of International Harvester and divided that total by nine.

(Hochhalter Aff. ¶¶ 7–9.)

the underlying policy of I.R.E. 606(b), which is to preserve finality of judgments and avoid attacks on jury verdicts post-trial. I believe that the district court's interpretation of these affidavits comports with these policy objectives, with the standard requiring a clear showing of a prior agreement to be bound, and with the cautious method of interpreting affidavits urged by *Watson I*. Because I believe that the district judge did not abuse his discretion in concluding that each juror did not agree in advance to be bound by an average on the issues of liability and damages, I would affirm his denial of the motion for new trial.